OPINION OF THE COURT
GREENBERG, Circuit Judge.
I. INTRODUCTION
This matter is before this court on an appeal from an order entered in the district court on July 28, 1998, granting the appel-lees’ motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the first amended complaint in this case for failure to state a claim on which relief may be granted. The case arises principally under the First Amendment to the United States Constitution, applicable to the states through incorporation under the Fourteenth Amendment. See Gitlow v. New York, 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925). In addition, appellants have set forth a supplemental' state-law claim. We are concerned here with the First Amendment’s impact on the awarding of a governmental contract. In view of the procedural posture of this case we accept the appellants’ factual allegations as true and view them in the light most favorable to appellants. See Smith v. National Collegiate Athletic Ass’n, 139 F.3d 180, 183 (3d Cir.1998), rev’d on other grounds, — U.S.-, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999).
Appellants, Jon McClintock and Cherryhill Associates, Inc., brought this action against appellees John Eichelberger, Jr., Brad Co-ber, Alexa Fultz, Robert Will, John Ebersole, and Southern Alleghenies Planning and Development Commission. Appellants assert that McClintock at all times relevant to this action was engaged in the business of marketing and advertising through Cherryhill, a Pennsylvania corporation, in which he is the principal shareholder. The individual appel-lees are commissioners of Blair, Somerset, and Huntington Counties, Pennsylvania, and as such are members of the Executive Board of the appellee, Southern Alleghenies Planning and Development Commission which, according to the appellants, “is a corporation or other entity existing under the laws of the Commonwealth of Pennsylvania.” Notwithstanding that imprecise characterization, it is undisputed that Southern Alleghenies is a public entity. Appellants allege that Southern Alleghenies at all times relevant “was engaged in developing the business and industries of the Counties of Bedford, Blair, Cambria, Somerset, Huntingdon and Fulton.”
The complaint alleges that beginning in 1985 appellants and Southern Alleghenies “developed an ongoing business relationship ... as independent contractors,” meaning that appellants have been independent contractors engaged by Southern Alleghenies to perform services. In particular, the complaint alleges that in 1985 Southern Alleghe *814 nies retained McClintoek to coordinate the promotion of its “Seatbelt Safety Demonstration Project” and in 1992 Southern Alleghenies retained Cherryhill “to coordinate providing promotional materials and advertising for the 1992 United States Olympic Cycle Trials which was coordinated by” Southern Alleghenies. Appellants allege that they performed their services to the satisfaction of Southern Alleghenies.
The final particularized allegation constituting this “ongoing business relationship” is that “[i]n the years of 1995, 1996 and 1997, ... Southern Alleghenies purchased various promotional materials from ... Cherryhill such as magnets, vinyl banner and bags and specially imprinted ‘Slinkies.’” It thus appears that the “ongoing business relationship” between appellants and Southern Alleghenies consisted of one contract in 1985 performed by McClintoek as an independent contractor, one contract in 1992 performed by Cherryhill as an independent contractor, and a vendor-vendee relationship between Cherryhill and Southern Alleghenies from 1995 through 1997 involving the sale of promotional materials.
The appellants next alleged that because of their “ongoing relationship” Southern Alleghenies requested Cherryhill “to submit a proposal ... to perform marketing services in connection with [its] TEAM PA Initiative. The marketing campaign proposed by ... Cherryhill was designed to make companies in the six county area aware of a survey process being conducted prior to interviewers contacting businesses to set up interview dates.” Of course, appellants allege that Cherryhill’s proposal provided for Southern Alleghenies to pay Cherryhill “for the services to be performed under the marketing contract.”
Appellants allege that the TEAM PA Initiative was a “coordinated effort” between Southern Alleghenies and certain otherwise unidentified “Industrial Development Corporations.” The Industrial Development Corporations reviewed Cherryhill’s proposal as well as those from other firms and “unanimously agreed to award the marketing contract to ... Cherryhill.” Appellants allege that on May 21,1997, the Finance Committee of Southern Alleghenies approved awarding the contract to Cherryhill following which the contract was presented to the Southern Alleghenies Executive Board for final approval.
Appellants allege that appellee “Eichelber-ger stated his opposition to awarding the contract to ... Cherryhill because [appellants] had supported and performed services for public officials and political candidates who [Eichelberger] opposed.” The other individual appellees agreed with Eichelberger. As a result of the vote of the five individual appellees “constituting a majority of the Executive Board” it defeated a motion to award the contract to Cherryhill. The Executive Board by the same vote then awarded the contract to another concern. While the complaint is unclear on this point, we infer that the Executive Board must have more than five members and that some of the members favored awarding the contract to Cherryhill.
Appellants alleged that appellees did not award the contract to Cherryhill because appellants:
in the exercise of their rights under the First and Fourteenth Amendments, had supported and performed services for various public officials and political candidates who were opposed by Defendant Eichel-berger and some or all of the other individual Defendants, or, in the alternative, Defendant Eichelberger opposed said public officials and political candidates and the other individual Defendants supported Defendant Eichelberger in denying the marketing contract to Plaintiff Cherryhill, with said other individual Defendants knowing that Defendant Eichélberger’s oppositions was based upon Plaintiffs’ support of said public officials and political candidates.
Appellants alleged that by reason of their “long, ongoing and satisfactory business relationship” with Southern Alleghenies and the approval of their proposal by the Industrial Development Corporations “acting as the TEAM PA Advisory Committee” as well as by Southern Alleghenies’ Finance Committee, they “had the expectation that the marketing contract would be awarded to ... Cherryhill.” Thus, they alleged that the ap-pellees acting under color of state law in violation of 42 U.S.C. § 1983 penalized them from exercising “their rights of free speech and assembly, as guaranteed by the First *815 and Fourteenth Amendments ... by supporting and working for public officials and political candidates of their choice.” Appellants also asserted that the facts they alleged constituted the statelaw tort of interference with “the advantageous relationship between ... Cherryhill and ... Southern Alleghenies.” Appellants sought compensatory and punitive damages. The district court had jurisdiction over appellant’s complaint under 28 U.S.C. § § 1331,1343(a), and 1367.
As we have indicated, the appellees moved to dismiss under Fed.R.Civ.P. 12(b)(6). The district court granted the motion in its memorandum and order of July 28, 1998. In .its memorandum the district court set forth the background of the case and then indicated that in Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), “the Supreme Court recognized that a public employee who alleges that he was discharged or threatened with discharge solely because of his partisan political affiliation or nonaffiliation states a viable claim under [42 U.S.C.] § 1983 that his First Amendment rights have been violated.” The district court then indicated that in Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court confirmed the Elrod holding that patronage dismissals are unconstitutional unless political affiliation is an appropriate requirement for the effective performance of the public office involved. The district court next said that in Rutan v. Republican Party of Illinois, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court extended Elrod and Branti by holding that those cases applied “to promotion, transfer, recall, and hiring decisions based on party affiliation and support.”. Id. at 79, 110 S.Ct. at 2739.
The district court then addressed two Supreme Court cases which, like this one, involved not employees, but independent contractors, Board of County Comm’rs v. Umbehr, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996), and O’Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996). The district court pointed out that in Um-behr and O’Hare the Court held that a government may not terminate an independent contractor’s relationship to -retaliate against the contractor for the exercise of his rights to political allegiance or political association. The district court noted, however, that Umbehr and O’Hare involved situations in which there had been ongoing commercial relationships between the public entity and the independent contractor. In fact, Umbehr and O’Hare respectively involved trash hauling and motor vehicle towing, municipal services of an ongoing character.
The district court indicated that appellants were not in the same position as the plaintiffs in Umbehr and OH are as Cherryhill “was no more than a bidder or applicant for a new government contract.”' Moreover, the district court, in declining to find a sufficient allegation of a First Amendment violation in the complaint, made reference to the Supreme Court’s caveat at the end of Umbehr:
Finally, we emphasize the limited nature of our decision today. Because Umbehr’s suit concerns the termination of a preexisting commercial relationship with the government, we need not address the possibility of suits, by bidders or applicants for new government contracts who cannot rely on such a relationship.
Umbehr, 518 U.S. at 685, 116 S.Ct. at 2352. The district court indicated that while the Supreme Court might extend the Elrod, Branti, and Rutan “jurisprudence to the claims of disappointed bidders and applicants,” it would not do so.
The district court ended its opinion by dismissing appellants’ state law claims. In this regard it pointed out that in Pennsylvania there cannot be a tortious interference with a contract unless three parties are involved, a tortfeaser, a plaintiff and a third party with whom the plaintiff is contracting. See Maier v. Maretti, 448 Pa.Super. 276, 671 A.2d 701, 707 (1995). Thus, the appellees could not be liable as the germane contract was with them. Furthermore, the result was not affected by reason of the fact that the individual appellees were officers or agents of Southern Alleghenies. See Daniel Adams Assocs., Inc. v. Rimbach Publ’g, Inc., 360 Pa.Super. 72, 519 A.2d 997, 1000-02 (1987). The district court then entered the order of July 28,1998.
*816 Appellants appeal from the order of July 28, 1998. We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review on this appeal. Thus, we can affirm only if we are certain that the appellants cannot prove any set of facts under the first amended complaint which would be the basis for relief. See Smith, 139 F.3d at 183.
II. DISCUSSION
Initially we identify the precise issue before this court. As we have indicated, the Supreme Court in Umbehr carefully limited its opinion to holding that there was a First Amendment protection of pre-existing commercial relationships while reserving decision on whether there is similar protection for bidders or applicants for new government contracts who cannot rely on such a relationship. Appellants pleaded their case within the Umbehr framework and thus the district court principally adjudicated the case on that basis. Accordingly, the gravamen of the district court’s opinion is that this case is distinguishable from Umbehr and O’Hare because appellants cannot claim the “status” of being in a “preexisting commercial relationship with Southern Alleghenies.”
The district court surely was correct in reaching this conclusion. In O’Hare the municipality had a list of tow truck operators which had included the plaintiff for many years. During a political campaign he declined to make a contribution to the incumbent mayor following which, allegedly in retaliation for that refusal, the municipality removed him from the list, thereby terminating a long term relationship. In Umbehr the plaintiff was a trash hauler who frequently criticized the county government which engaged him. Umbehr brought suit charging that the county terminated his contract in retaliation for his speech. In Umbehr, as in O’Hare, the retaliation terminated an active ongoing independent contractor relationship for the supplying of governmental services.
This case, however, is very different from Umbehr and O’Hare. Notwithstanding the appellants’ pleading that they have had “an ongoing business relationship” with Southern Alleghenies since 1985, the facts which they have pled make it clear that the relationship is distinguishable from those in Umbehr and O’Hare. Here appellants had two prior contracts with Southern Alleghenies for discrete services, the 1985 seatbelt project and the 1992 project coordinating the provision of promotional materials and advertising for the Olympic cycle trials. In addition, Cherryhill as a vendor supplied promotional materials to Southern Alleghenies.
Appellants do not allege that the contract for marketing services in connection with the TEAM PA Initiative involved here is related in any way to their prior contracts with Southern Alleghenies. Thus, their status differs from that of the plaintiffs in Umbehr and O’Hare who were providing ongoing services when the public entities terminated their relationship in retaliation for their political activities. We therefore conclude that with respect to the TEAM PA Initiative, this action does not “concern [ ] the termination of a pre-existing commercial relationship with the government.” Umbehr, 518 U.S. at 685, 116 S.Ct. at 2352. Rather, this case involves a “suit[] by[a] bidder[] or applicant ] for [a] new government contract[ ] who cannot rely on such a relationship.” Id.
Our analysis leads us to affirm the order of the district court for each of two independent reasons, one procedural and one substantive, either of which alone requires our result. The procedural reason is that appellants pled this case in the district court relying on their ongoing relationship with Southern Alleghenies and thus the viability of their claim depends on their ability to demonstrate that they had such a relationship. While we recognize that the appellants in their district court brief in opposition to appellees’ motion to dismiss stated that if the court found that they did not have the same status as the plaintiffs in Umbehr and O’Hare, they nevertheless were entitled to First Amendment protection from retaliation, this argument went beyond the pleadings.
.On this appeal appellants continue to focus on their previous relationship with Southern Alleghenies. Thus, they summarize their First Amendment argument as follows:
Cherryhill and McClintock were regular providers of services to Southern Alleghenies and had.an existing commercial relationship with Southern Alleghenies. As such Cherryhill and McClintock were enti- *817 tied to protection from retaliation for exercise of their right to political expression. Thus, Southern Alleghenies’ failure to award a contract to Cherryhill solely because Cherryhill and McClintock had worked for supported and worked for political opponents of Eichelberger states a claim for which relief can be granted. Accordingly, the district court erred in granting Southern Alleghenies’ Motion to Dismiss the First Count of the First Amended Complaint.
Br. at 9.
In their brief in this court appellants once again contend that “[e]ven assuming that this Court finds that [they] do not have the same status as the plaintiffs in Umbehr and O’Hare, [they] are nonetheless entitled to protection, from government retaliation for exercise of their First Amendment rights.” Br. at 15. We, however, will not entertain this argument as appellants did not plead it as the basis for relief in their complaint. See Krouse v. American Sterilizer Co., 126 F.3d 494, 499 n. 1 (3d Cir.1997). Accordingly, we will affirm the order of the district court for, as we already have indicated, the appellants do not have an ongoing relationship with Southern Alleghenies entitled to First Amendment protection under Umbehr and O’Hare.
In any event, even if we entertained appellants’ argument that without regard for their status under Umbehr and O’Hare they are entitled to relief, we would affirm. In reaching this result we understand that under Rutan certain applicants for public employment are entitled to First Amendment protection and that Umbehr indicated that “[independent government contractors are similar in most relevant respects to government employees.” 518 U.S. at 684, 116 S.Ct. at 2352. Nevertheless, the Court in Umbehr “emphasi2ie[d] the limited nature of [its] decision” and thus did “not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship.” Id. at 685, 116 S.Ct. at 2352. The Court therefore carefully cabined its decision.
In Horn v. Kean, 796 F.2d 668, 678 (3d Cir.1986) (in banc), we cautioned against extending First Amendment holdings if they would cause the judiciary to “intrude itself into such traditional practices as contract awards by the government’s executive, be it on a federal, state or local level.” Thus, we suggested that if expansion in the area is to come the source should be the Supreme Court. Id. While the substantive holding in Horn does not survive the later Supreme Court cases we have cited, still Horn’s admonition remains true. Certainly it is difficult for a court to predict what the consequences would be on political activity if the First Amendment protections are extended beyond the Umbehr and O’Hare boundaries. Perhaps the extension even would discourage political activity.
On the other hand, retaliation in a situation involving ongoing contracts obviously presents a clear set of dynamics. Protection of an independent contractor with a preexisting commercial relationship with the public entity from retaliation by reason of his political activity plainly protects his First Amendment rights. Accordingly, there is a principled reason to limit Umbehr and O’Hare to situations in which, unlike the one here, the retaliatory act is the termination of an ongoing commercial relationship.
The final issue before us involves appellants’ state law supplemental claim. We see no reason to discuss this claim on the merits as we agree with the district court’s dismissal of it and have nothing to add to its analysis. We, however, point out that the appellants do not contend that the district court abused its discretion in exercising jurisdiction over this claim. See 28 U.S.C. § 1367(c).
III. CONCLUSION
For the foregoing reasons, we will affirm the order of July 28,1998.