671 A.2d 701

**Donna MAIER, Appellant,**

v.

**Mary MARETTI and Donald Maretti.**

Superior Court of Pennsylvania.

Argued Sept. 26, 1995.

Filed Dec. 28, 1995.

Reargument Denied March 6, 1996.

280

Byron King, Pittsburgh, for appellant.

Martin Saunders, Pittsburgh, for appellees.

Before ROWLEY, President Judge, and BECK and HUDOCK, JJ.

BECK, Judge:

This is an appeal from an order of the Court of Common Pleas of Beaver County granting summary judgment in favor of appellees, Mary and Donald Maretti. Appellant, Donna Maier, filed suit against the Marettis alleging defamation and interference with contract. Appellant claims Mary Maretti intentionally and falsely attributed words to appellant which caused appellant to be terminated from her employment with Sears. We affirm the trial court's grant of summary judgment in the defamation and interference with contract actions.

Appellant Maier was employed by Sears in its maintenance department. Appellee Mary Maretti was appellant's immediate supervisor. When Sears began requiring its maintenance employees to work on Sundays, appellant refused to work because of her religious beliefs and was suspended from her job. Appellant subsequently filed a complaint with the United States Equal Employment Opportunity Commission [EEOC]. Before the EEOC had published its findings and determinations, appellant placed a call to appellee. Appellant claims the conversation concerned candy appellant had bought from appellee's sister and questions concerning who handled Sears' unemployment compensation. Following the conversation, appellee reported to the Branch Manager of Sears, Mr. Page, that appellant stated to appellee: "You better play ball with me, or I'm going to put your f--cking head through the wringer with your extramarital affair." Branch Manager Page concluded appellant was guilty of gross insubordination and harassment and fired appellant. Appellant denies making this statement and brought suit claiming appellee is guilty of defamation and tortious interference with contract. Appellant claims appellee falsely and intentionally attributed the above quoted words to appellant in her report to the branch manager and the personnel director. Appellee filed a motion for summary judgment alleging (1) the character of the statement was not defamatory and (2) a claim of interference with contract did not exist because there was no interference with a contract by a third person. The trial court granted appellee's summary judgment which is the subject of this appeal.

■■ Our standard of review in assessing the grant of a motion for summary judgment requires us to view the record in a light most favorable to the non-moving party. *Rybas v. Wapner,* 311 Pa.Super. 50, 457 A.2d 108 (1983). We must accept as true all well-pleaded facts in the non-moving party's pleading, giving the non-moving party the benefit of all reasonable inferences to be drawn therefrom. *Id.* We will uphold a grant of summary judgment only in those cases in which the pleadings, depositions, interrogatories, and admis-

sions on file, together with affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Elia v. Erie Ins. Exchange,* 430 Pa.Super. 384, 634 A.2d 657 (1993).

## DEFAMATION

In an action for defamation, the plaintiff must prove: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to plaintiff; (6) special harm to the plaintiff; (7) abuse of a conditionally privileged occasion. 42 Pa.C.S. § 8343(a) (Purdons 1982). Initially, it is the function of the court to determine whether the communication complained of is capable of a defamatory meaning. *Rybas, supra.* A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Elia, supra.* A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession. *Gordon v. Lancaster Osteopathic Hospital Ass'n,* 340 Pa.Super. 253, 489 A.2d 1364 (1985). If the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial; however, if there is an innocent interpretation and an alternate defamatory interpretation, the issue must proceed to the jury. *Livingston v. Murray,* 417 Pa.Super. 202, 612 A.2d 443 (1992).

In determining whether the communication is defamatory, the court must consider the effect the statement would fairly produce, or the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. *Rybas, supra.* The words must be given by judges and juries the same significance that other people are likely to attribute to them. *Livingston v. Murray,* 417 Pa.Super. 202, 612 A.2d 443 (1992). Furthermore, the

nature of the audience hearing the remarks is a critical factor in determining whether the communication is defamatory. *Id.* *See Gordon v. Lancaster Osteopathic Hospital Ass'n,* 340 Pa.Super. 253, 489 A.2d 1364 (1985) (court must consider the expertise and knowledge of those to whom the publication is circulated and consider the effect it is fairly calculated to produce); *Agriss v. Roadway Express Inc.,* 334 Pa.Super. 295, 483 A.2d 456 (1984). It is also important to note communications which may annoy or embarrass a person are not sufficient as a matter of law to create an action in defamation. *Gordon, supra.*

Appellant claims appellee's false attribution of the sentence to appellant tended to lower appellant in the estimation of her employer, implied that appellant is vulgar, crude and grossly insubordinate, and indicated that appellant is intemperate, lacks integrity and self-control. The trial court concluded the statement was not capable of defamatory meaning because nothing in the statement tended to harm appellant's reputation. (Tr.Ct.Op. at 4). We agree with the trial court's determination, and affirm the grant of summary judgment with respect to the defamation claim.

■■■ Even viewing the evidence in a light most favorable to appellant (that appellee falsely attributed the statement to appellant), the statement was incapable of a defamatory meaning. Attributing the quotation to appellant clearly embarrassed appellant, but it in no way lowered the community's estimation of appellant. First, alleging someone is crude, vulgar and insubordinate is not as offensive as other statements which have been characterized as incapable of defamatory meaning. *See Parano v. O'Connor,* 433 Pa.Super. 570, 641 A.2d 607 (1994) (statements that plaintiff was less than helpful, uncooperative and took adversarial position was not capable of defamatory meaning because they are far less offensive than other characterizations); *Kryeski v. Schott Glass Technologies,* 426 Pa.Super. 105, 626 A.2d 595 (1993), *allocatur denied,* 536 Pa. 643, 639 A.2d 29 (1994) (statement that plaintiff was crazy not capable of defamatory meaning); *Gordon v. Lancaster Osteopathic Hospital Ass'n,* 340 Pa.Su-

per. 253, 489 A.2d 1364 (1985) (statements by appellee that they lacked confidence in appellant's work and performance, and lacked trust in appellant were not capable of defamatory meaning); *Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456 (1984) (statement published to employee's supervisor and co-workers concerning plaintiff's opening of company mail was defamatory because it implied plaintiff had committed a crime); *Rybas v. Wapner, supra* (characterizing person as anti-Semitic was not defamatory); *Goralski v. Pizzimenti,* 115 Pa.Commw. 210, 540 A.2d 595 (1988) (statement that appellant was terminated due to misconduct was not capable of defamatory meaning). In *Agriss v. Roadway Express, Inc., supra,* this court held the statement was capable of defamatory meaning because it implied the employee had committed a crime. However, in the present litigation there is no implication that appellant committed a crime. Given the above cited case law, an allegation that appellant was vulgar, crude and insubordinate, in no way reached the level capable of defamatory meaning and harm to appellant's reputation in the community.

Second, attributing the quoted words to appellant implied appellant was vulgar, crude and obscene and alleging someone is crude and vulgar is not capable of defamatory meaning. In *Wecht v. PG Publishing Co.,* 353 Pa.Super. 493, 510 A.2d 769 (1986), this court held cartoon which portrayed appellant as a vile, obscene, abusive insensitive and paranoid individual was not capable of defamatory meaning.

Furthermore, Pennsylvania case law holds that the nature of the audience is a critical factor in determining whether the communication is defamatory. In *Rybas v. Wapner,* this court stated audience was a critical factor and since the statement was made only to a fellow attorney, the intended publication was extremely limited. 311 Pa.Super. at 56, 457 A.2d at 111. The court further held because the audience was limited it would not harm the reputation of the plaintiff in the community. *Id.* See *Agriss v. Roadway Express, Inc., supra* (statement published to employee's supervisors and co-workers concerning plaintiff's opening of company mail was defamatory

because public contempt and ridicule was clear); *Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583 (1980) (alleged defamation was evaluation of academic performance and since communication intended for only a few members of the community, it did not lead community to ostracize or shun plaintiff). Here the statement was a report by appellee to the branch manager and personnel director of Sears. The statement was not intended for a large audience; therefore, there was no harm to appellant's reputation in the community.

Appellant argues the fact she was immediately fired after the statement was falsely attributed to her evidences her reputation was harmed, that third persons were deterred from associating with her, and caused injury to her business or profession. In *Gordon v. Lancaster Osteopathic Hospital Ass'n*, Gordon claimed he was defamed when several colleagues wrote letters to the Hospital's Board of Directors stating they had no confidence in Gordon and lacked trust in Gordon's ability. 340 Pa.Super. at 262, 489 A.2d at 1369. Gordon's contract was not renewed after these letters. *Id.* The court stated that a communication is defamatory if it ascribes to another conduct, character or condition that would adversely affect his fitness for the proper conduct of his proper business or profession. *Id.* The court further stated that the imputation must be of such a character as to disparage the other in his business, trade, profession or office or tend to harm him in it. *Id.* (citing Restatement (Second) of Torts § 573, comment (c) (1977)). The court then held that these statements were incapable of defamatory meaning. *Id.* In the present litigation, appellant claims attributing the quote to her imputed characteristics which injured her trade/profession. The statement, however, did not concern her abilities to perform her job and did not harm her trade or ability to become employed elsewhere.

Clearly the alleged communication was not defamatory because it did not cause appellant's reputation to be lowered in the community nor cause third persons from associating with her. However, regardless of whether or not the communication was defamatory, appellee's report to the branch manager

and personnel director was privileged and appellant failed to allege any genuine issue of material fact regarding the abuse of that privilege.

Communications are privileged when made on a proper occasion, from a proper motive, and in a proper manner. *Beckman v. Dunn,* 276 Pa.Super. 527, 419 A.2d 583 (1980). This occurs when circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know. *Id.* (citing *Rankin v. Phillippe,* 206 Pa.Super. 27, 211 A.2d 56 (1965)). In the present litigation, appellant was suspended for refusal to work on Sundays and had filed an EEOC complaint; therefore, both appellee as appellant's supervisor and Sears' branch manager and personnel director had a common interest in appellant. As a supervisor, appellee correctly believed the branch manager had a right to know about incidents involving appellant. Furthermore, this court in *Rutherfoord v. Presbyterian–University* concluded that communications among management-level persons concerning employee's job performance were necessary for the operation of the department and therefore privileged. 417 Pa.Super. 316, 612 A.2d 500 (1992). This court in *Daywalt v. Montgomery Hospital* held a supervisor's communication of her suspicions concerning plaintiff's alteration of her time card to personnel director and payroll department was privileged. 393 Pa.Super. 118, 573 A.2d 1116 (1990). The court stated this privilege applied to private communications among employers regarding discharge and discipline. *Id.* Appellant was suspended from her job; therefore, appellee's report to the branch manager did not concern appellant's job performance; however, it did involve discipline and discharge of appellant. In light of appellant's refusal to work on Sundays and the filing of an EEOC complaint, it is reasonable that appellee would report any conversations with appellant to the branch manager and personnel director.

 Appellant argues that since she denied the existence of a conditional privilege in her responsive pleading that a genuine issue of material fact automatically exists. However, to withstand a motion for summary judgment, appellee must do more than allege the non-existence of a privilege in her pleadings. *See Kniaz v. Benton Borough,* 164 Pa.Commw. 109, 642 A.2d 551 (1994) (when motion for summary judgment is made and supported, adverse party may not rest only on the mere allegations or denials in his pleading, but must set forth in his response by affidavits or as otherwise provided, specific facts in dispute).

 Appellant also argues appellee abused the conditional privilege because appellee fabricated the statement and falsely attributed it to appellant out of malice.[1] However, the only evidence of malice set forth by appellant is in her pleading where she alleges the statement was made as revenge for appellant's filing of the EEOC complaint. Appellant sets forth no other evidence that appellee acted out of malice towards appellant. On the other hand, appellant's testimony is contrary to her allegation of malice.[2] As a result, there is no genuine issue of material fact regarding the existence of a privilege or appellee's abuse of that privilege. Appellee was privileged in her communication and did not abuse that privilege; therefore, we agree with the trial court's grant of summary judgement in appellee's favor with respect to the defamation claim.

We affirm the grant of summary judgment in appellee's favor based on our conclusion that (1) the communication was not capable of defamatory meaning and (2) appellee was privileged in her communication.

[1] An abuse of a conditional privilege occurs when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege or includes defamatory matter not necessary for the accomplishment of the purpose. *Beckman v. Dunn,* 276 Pa.Super. 527, 419 A.2d 583 (1980).

[2] Appellant testified in her deposition that appellee treated her fairly and that appellee had no apparent personal grudge against appellant.

INTERFERENCE WITH CONTRACT

Appellant argues appellee's fabrication and attribution of the statement to appellant causing Sears to terminate appellant's employment interfered with appellant's employment contract with Sears. The trial court granted summary judgment in favor of appellees with respect to appellant's claim for interference with contract. The trial court stated that because appellee was an employee of Sears, appellee and Sears were one and the same, and the suit must be dismissed because there was an absence of three parties required to maintain a claim of tortious interference with contract. We affirm the trial court's grant of summary judgment.

The tort of interference with contract provides that one who intentionally and improperly interferes with the performance of a contract between another and a third person by causing the third person not to perform the contract is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract. *Daniel Adams Associates v. Rimbach Publishing,* 360 Pa.Super. 72, 519 A.2d 997 (1987) (citing Restatement (Second) of Torts § 766). Essential to recovery on the theory of tortious interference with contract is the existence of three parties; a tortfeasor who intentionally interferes with a contract between the plaintiff and a third person. *Id.* As a result there must be a contractual relationship between the plaintiff and a party other than the defendant. Appellant argues she is the first party, appellee is the second party who intentionally interfered with the contract and Sears is the third party. Appellant, however, overlooked case law which holds a corporation acts only through its agents and officers, and such agents or officers cannot be regarded as third parties when they are acting in their official capacity. *Daniel Adams Associates, supra. See Rutherfoord v. Presbyterian University Hospital, supra* (stating when claim for intentional interference is based on contract with employer and relationship is terminated by agent of employer acting within the scope of his agency there is no third party involved and no claim will lie); *Nix v. Temple University,* 408 Pa.Super. 369,

596 A.2d 1132 (1991) (persons alleged to have interfered with plaintiff's contract with Temple were all administrative officers of Temple who were acting on behalf of Temple when appellant was discharged; therefore, plaintiff failed to meet requirement of three parties).

In the present litigation, appellant as appellee's supervisor had a duty to supervise the employees below her and report any incidents, misconduct and acts of insubordination to her superior. Therefore, when appellee reported appellant's telephone conversation to the branch manager she was acting within the scope of her employment. Appellee and Sears are therefore, the same party. Since appellant failed to allege three parties were involved, appellant's claim of contractual interference fails. We affirm the trial court's grant of summary judgment in favor of appellee with respect to the claim of interference with contract.

Order of Summary Judgment affirmed.