David **PUCHALSKI** and Lisa Puchalski,

v.

**SCHOOL DISTRICT OF SPRINGFIELD, School Board of Springfield Township, James Asciutto, Dr. Leary, Martin Mersky, Hugh McGovern and Dr. Thomas Stapleton.**

No. CIV. A. 99–1068.

United States District Court, E.D. Pennsylvania.

March 30, 2001.

John J. Donnelly, Donnelly & Associates, P.C., Media, PA, for Plaintiffs.

Michael D. Kristofco, Wisler, Pearlstine, Talone, Craig, Garrity & Potash, Blue Bell, PA, for Defendants.

## MEMORANDUM

WALDMAN, District Judge.

### I. *Introduction*

This case involves the decision of the principal of Springfield High School ("Springfield") not to renew the contract of David Puchalski as Springfield's head football coach. Plaintiff David Puchalski asserts parallel claims for age discrimination under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"), a claim for deprivation of a property interest in his job under 42 U.S.C. § 1983, and state tort claims for intentional and negligent misrepresentation, civil conspiracy, intentional interference with a contractual relationship, invasion of privacy—false light and defamation. Plaintiff Lisa Puchalski has asserted a claim for loss of consortium.

Presently before the court are defendants' motion for partial summary judgment and two motions by plaintiffs for partial summary judgment.

### II. *Legal Standard*

When considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 568 (3d Cir.1986). Only facts that may affect the outcome of a case are "material." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. All reasonable inferences from the record are drawn in favor of the non-movant. *Id.* at 256, 106 S.Ct. 2505.

Although the movant has the initial burden of demonstrating the absence of genu-

ine issues of material fact, the non-movant must then establish the existence of each element on which he bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir. 1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party may not rest on his pleadings but must come forward with competent evidence from which a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989); *Woods v. Bentsen,* 889 F.Supp. 179, 184 (E.D.Pa.1995).

### III. *Factual Background*

From the evidence presented, as uncontroverted or otherwise taken in a light most favorable to plaintiffs, the pertinent facts are as follow.

Mr. Puchalski was employed as the head football coach at Springfield on a yearly basis for ten years. His direct supervisor was Hugh McGovern, Springfield's Athletic Director. There were at least two other coaches on Springfield's football team staff, Christopher Shelley whose age is unknown and James Farrington who was 24 years old at the time. Mr. Puchalski also worked full-time as an administrator at Carson Valley School ("Carson Valley"), a private school which is a five minute commute from Springfield. Most of the students at Carson Valley are African–American.

At a football game against Chestnut Hill Academy in the fall of 1997, Roger Conduit, a local sports reporter who had been standing on the sidelines, informed Mr. McGovern that Mr. Puchalski had shouted a racist epithet at a football player during the game. Mr. McGovern reported the incident to Dr. Thomas Stapleford, the principal of Springfield, and to Martin Mersky, the assistant principal.

Mr. McGovern and Dr. Stapleford discussed the renewal of Mr. Puchalski's contract at some point after this game. Dr. Stapleford decided not to renew the contract. On January 5, 1998, after the conclusion of the football season, Mr. McGovern and Dr. Stapleford met with Mr. Puchalski and informed him that the School District of Springfield (the "District") would not be renewing his football coaching contract. Dr. Stapleford stated that they "want to take the program in a new direction" and were "looking to hire a young coach who works in the district." Dr. William Leary, the District Superintendent, did not permit Mr. Puchalski to talk with the football team on school grounds after the decision.

Mr. Puchalski's contract was a boilerplate document entitled "Extracurricular Assignment Contract" with blanks for the employee's name and personal information, information about the position, and for the starting and ending dates for the activity. The printed document stated that it was a one-year contract, although the activity was described as beginning on August 11, 1997 and ending on November 27, 1997. The contract also provided that Mr. Puchalski would receive compensation payments beginning after the start of the activity and ending at least two weeks after the activity concluded and when all phases of work were satisfactorily completed. The contract further stated that the last pay day must be scheduled after the activity had been completed. Mr. Puchalski marked November 28, 1997 as his only payday. His pay for the 1997 season was $4,166.

Defendants proffered numerous legitimate reasons for the decision not to renew Mr. Puchalski's contract. They assert that Mr. Puchalski allowed athletes to practice without obtaining the physical examination

forms required by the Pennsylvania Interscholastic Athletic Association ("PIAA"); failed to adequately control player behavior; actively opposed and publicly criticized Springfield's administration during a PIAA investigation; failed to maintain satisfactory working relationships with coaching staff members who were teachers; berated officials during a game; made racist remarks during practices and games; ran up a score in an unsportsmanlike manner; and, delayed informing school officials that the football team's opponents used fifth-year seniors which violated PIAA rules and could have resulted in sanctions against Springfield. Mr. Puchalski contends that these were not the true reasons that his contract was not renewed. He specifically denies the truth of the stated reasons except for running up a score against an opponent and allowing athletes to practice without the required physicals which he acknowledges.

About two months after the January 5, 1998 meeting, Dr. Leary spoke at a public school board meeting regarding his plans and aspirations for the athletic teams in the District. The statement was titled "Springfield Township High School: The Athletic Program". The statement contained no reference to Mr. Puchalski or any particular coach. Dr. Leary discussed the need to exhibit good sportsmanship, to avoid "bad" language, to serve as role models for the students, to ensure student athletes' health by complying with the requirement of physical examinations, to honor the PIAA rules and to work cooperatively with others in the school system.

After offering Mr. Puchalski's former position to one candidate who declined the

offer, Springfield accepted resumes and interviewed ten candidates. James Farrington, a teacher and assistant football coach under Mr. Puchalski, was ultimately hired. He was 25 years old at the time.

Mr. Puchalski sent out applications for two head football coaching positions in 1998 and one application in 1999. He did not receive any job offers. He is still employed by Carson Valley.

Mr. Puchalski suffered "depression, anger and obsession." His prospects of obtaining alternate employment and reputation in the community were damaged. Lisa Puchalski suffered loss of "services, companionship and consortium" because Mr. Puchalski's "self-esteem" was injured.

During the summer of 1998, Mr. McGovern told William Travers, a mutual acquaintance of McGovern and Puchalski, that he had made a racist remark. He also stated to about twenty people that "there was more to it [the decision not to renew Puchalski's contract] than what's in the papers."

■ Several articles appeared in the local newspapers concerning the decision not to renew Puchalski's contract and Dr. Leary's statement to the School Board. All quoted Mr. Puchalski extensively. The articles also contain quotations attributed variously to Dr. Stapleford, Dr. Leary and Mr. McGovern.[1]

In a January 11, 1998 article in the Springfield Record, Dr. Stapleford is quoted as saying that the administration had "some young folks" who were teachers at Springfield and potential candidates for Mr. Puchalski's position. Dr. Stapleford

1. When offered for the truth of the matters stated, a news article is incompetent hearsay evidence which thus would ordinarily not be considered for summary judgment purposes. See *Abruzzi Foods, Inc. v. Pasta & Cheese, Inc.*, 986 F.2d 605, 606 (1st Cir.1993); *Poretto v. U.S.*, 196 F.2d 392, 395 (5th Cir.1952); *Barnes Foundation v. Township of Lower Merion*, 982 F.Supp. 970, 996 (E.D.Pa.1997). With one exception, however, defendants in the instant case acknowledge making the reported statements as attributed.

was also quoted as saying that Springfield would interview candidates for a new head football coach and that Mr. Puchalski was "free to re-apply."

In a January 15, 1998 article in the Springfield Sun, Mr. Puchalski is quoted as stating that Dr. Stapleford spent very little time with him and had never told him there were problems with his coaching. Dr. Stapleford is quoted in response that Mr. Puchalski's comment was "patently untrue," that Springfield wanted teachers to be involved as coaches and noting that Mr. Puchalski had to drive over from Carson Valley School during regular school hours to handle an emergency situation. In discussing the pending departure of two assistant coaches, Mr. McGovern also was quoted as saying that the school was "very concerned with losing the two young teachers." [2]

In another Springfield Sun article published a few weeks later, it was reported that when asked whether his statement to the school board about the athletic programs involved issues with Mr. Puchalski's tenure as head coach, Dr. Leary responded "I'd rather not get into that. There have been lapses occasionally in all sports." Dr. Leary also is quoted as saying that candidates were being interviewed for the head coach position.

In another Record article published at about the same time, Dr. Stapleford is reported as saying that Mr. Puchalski's job was opened up as part of a movement towards hiring young coaches who also teach at the high school.

## IV. *Defendant's Summary Judgment Motion*

Defendants have moved for summary judgment on Mr. Puchalski's negligent and intentional misrepresentation, § 1983, civil

conspiracy, interference with contractual relations, defamation and false light privacy claims. They also ask for summary judgment on Lisa Puchalski's loss of consortium claim and for judgment against Mr. Puchalski on his prayer for future wages.

### A. *Negligent and Intentional Misrepresentation*

■ Mr. Puchalski's misrepresentation claims are predicated on the following statements: Dr. Stapleford's comment quoted in the Record article that the position was open and Mr. Puchalski was free to reapply; Mr. McGovern's comment to Mr. Travers regarding Mr. Puchalski's racial slur; the prior positive evaluations of Mr. Puchalski; an implied misrepresentation in the news articles that all candidates for Mr. Puchalski's former position would be treated fairly; and, Dr. Leary's comments to the school board.

■ To sustain a negligent misrepresentation claim, a plaintiff must show a misrepresentation of a material fact; that the representor either knew of the misrepresentation, made the misrepresentation without knowledge as to its truth or falsity, or made the representation under circumstances in which he ought to have known of its falsity; that the representor intended the representation to induce plaintiff to act on it; and, that he was injured by acting in justifiable reliance on the misrepresentation. *See Weisblatt v. Minnesota Mut. Life Ins. Co.,* 4 F.Supp.2d 371, 377 (E.D.Pa.1998); *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 890 (1994). To sustain an intentional misrepresentation claim, a plaintiff must show a misrepresentation; a fraudulent utterance; that defendants intended to induce action by him;

---

**2.** Mr. McGovern denies he used the word "young." He states he referred to the two

persons in question as "new teachers" and not "young teachers."

and, that he justifiably relied on the misrepresentation and was injured as a proximate result. *See Pacitti v. Macy's,* 193 F.3d 766, 778 (3d Cir.1999); *Banks v. Jerome Taylor & Assocs.,* 700 A.2d 1329, 1333 (Pa.Super.1997).

Because all the alleged misrepresentations except the evaluations were made to third parties, Mr. Puchalski must also show that the maker intended or had reason to expect that the misrepresentation would be repeated to him and that he would rely on it. *See Michael v. Shiley, Inc.,* 46 F.3d 1316, 1335 (3d Cir.1995), *abrogated on other grounds by Medtronic, Inc. v. Lohr,* 518 U.S. 470, 484, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996); *Kurtz v. American Motorists Ins. Co.,* 1995 WL 695111, *2 (E.D.Pa. Nov.21, 1995); *Woodward v. Dietrich,* 378 Pa.Super. 111, 548 A.2d 301, 309 (1988).

There is no competent evidence of record from which one reasonably could find defendant McGovern, Leary or Stapleford intended or had reason to expect that these comments would be repeated to Mr. Puchalski or that he would rely on them. There is also no competent evidence of record that Mr. Puchalski actually did rely on these comments.[3] Indeed, he admits that he did not forfeit any position because of his reliance on Dr. Stapleford's comments regarding re-application and the interviewing process.

It is unclear that any defendant filled out Mr. Puchalski's past performance evaluations. In any event, there is no evidence that Mr. Puchalski justifiably relied on the performance evaluations to his detriment. *See, e.g., Kennedy v. Chubb Group of Ins. Cos.,* 60 F.Supp.2d 384, 397

(D.N.J.1999). As the evaluations contained positive statements about Mr. Puchalski's job performance, he does not appear to suggest that the evaluations were themselves misrepresentations. Insofar as he suggests that he believed his contract would be renewed in view of the evaluations, he has not shown that he sustained any injury as a proximate result of such belief.

### B. *Section 1983 Claim*

Mr. Puchalski asserts that he was deprived of fundamental rights to his reputation and to continued employment.

There is no fundamental right to retain public employment. *See Nicholas v. Pennsylvania State University,* 227 F.3d 133, 142 (3d Cir.2000); *Nilson v. Layton City,* 45 F.3d 369, 371 (10th Cir.1995); *McKinney v. Pate,* 20 F.3d 1550, 1560 (11th Cir.1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1351 (6th Cir.1992). Those property rights which enjoy procedural due process protection are determined by state law. *See Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Thus, any property interest in employment must be found in state law. *See Cooley v. PHFA,* 830 F.2d 469, 471 (3d Cir.1987). There is no suggestion that Mr. Puchalski had civil service protection. Thus, any property right he had must be found in his contract. *See Skrocki v. Caltabiano,* 568 F.Supp. 703, 704–05 (E.D.Pa.1983); *Hill v. City of Chester,* 1994 WL 463405, *4 (E.D.Pa. Aug.26, 1994); *Hoffman v. Mont-*

---

**3.** Although Dr. Stapleford and Mr. McGovern may have intended that third parties rely on the statements and some might have so relied, Mr. Puchalski cannot maintain a misrepresentation claim for harm he may have sustained as a result of the reliance by another on a false statement concerning him. *See Westwood–Booth v. Davy–Loewy Ltd.,* 1999 WL 219897, *4 (E.D.Pa. Apr.13, 1999); *Kurtz,* 1995 WL 695111 at **4–5.

*our County,* 50 Pa.Cmwlth. 101, 411 A.2d 1319, 1320 (1980).

Although the first page of the boilerplate contract notes a term of one year, the second page clearly states that the activity contracted for would end on November 27, 1997. Moreover, Mr. Puchalski himself denoted on the second page that he wished to be paid on November 28, 1997. This page also clearly states that the employee's last payday must be after the completion of the activity. The contract clearly provided Mr. Puchalski with a right to employment only through November 27, 1997.

 Even if the contract extended for a calendar year until June 17, 1998, Mr. Puchalski still was not deprived of a property right. When a term employee is terminated before his contract ends but he is fully compensated for the entire term of the contract, the employee cannot recover under § 1983. *See Royster v. Board of Trustees of Anderson County Sch. Dist. No. 5,* 774 F.2d 618, 621 (4th Cir.1985); *Harrington v. Lauer,* 888 F.Supp. 616, 619–20 (D.N.J.1995); *Schneeweis v. Jacobs,* 771 F.Supp. 733, 736–37 (E.D.Va. 1991) (coach suspended during term of her contract but fully compensated was not deprived of a property right).

It is uncontroverted that Mr. Puchalski received the total amount due him under his contract. Although he argues that Springfield was obligated to provide him with a performance evaluation at some point after November 28, 1997, he has produced no evidence of this obligation. He contends that the District's employee handbook suggests he was entitled to an evaluation, but no handbook text reflecting any such obligation has been produced and Mr. Puchalski acknowledged in his deposition that he received only four evaluations in his ten years of employment. In any event, Mr. Puchalski had no constitutionally protected right to an evaluation.

 There is no constitutionally protected property or liberty interest in reputation. *See Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Clark v. Township of Falls,* 890 F.2d 611, 619 (3d Cir.1989); *DeFeo v. Sill,* 810 F.Supp. 648, 656 (E.D.Pa.1993).

 Where one is defamed or stigmatized in the course of his dismissal from public employment, however, he does have a cognizable liberty interest. *See Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Paul,* 424 U.S. at 709, 96 S.Ct. 1155; *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Brennan v. Hendrigan,* 888 F.2d 189, 196 (1st Cir.1989); *Doe v. Department of Justice,* 753 F.2d 1092, 1111 (D.C.Cir.1985). That interest, however, is not accorded substantive due process protection. *See In re Selcraig,* 705 F.2d 789, 796–97 (5th Cir. 1983). Rather, the right accorded is that of procedural due process, specifically the right to an opportunity to refute the charges and clear one's name. *See Codd,* 429 U.S. at 627, 97 S.Ct. 882; *Paul,* 424 U.S. at 710, 96 S.Ct. 1155; *Roth,* 408 U.S. at 573, 92 S.Ct. 2701; *Brennan,* 888 F.2d at 196; *Doe,* 753 F.2d at 1102–03.

 Thus, a federal constitutional claim arises not from the defamatory or stigmatization conduct *per se* but from the denial of a name-clearing hearing. *Selcraig,* 705 F.2d at 797 & n. 10. It follows that to sustain a § 1983 stigmatization claim, an aggrieved employee must allege and prove that he timely requested a name-clearing hearing and that the request was denied. *See Howze v. City of*

*Austin,* 917 F.2d 208 (5th Cir.1990); *Rosenstein,* 876 F.2d at 396.

■ There is no evidence that defendants made the pertinent statements while declining to renew Mr. Puchalski's contract. Mr. McGovern's comment to Mr. Travers was made more than six months after the non-renewal of Mr. Puchalski's contract and Dr. Leary made the statement to the School Board more than a month after the non-renewal.[4] Moreover, there is no evidence that Mr. Puchalski ever requested a name-clearing hearing which he was denied as required to sustain this claim. *See O'Connell v. County of Northampton,* 79 F.Supp.2d 529, 536 (E.D.Pa.1999).

## C. *Defamation*

■ To sustain a defamation claim, a plaintiff must prove a defamatory communication was published by the defendant which applied to plaintiff and that the recipient understood its defamatory meaning and understood that the communication was intended to apply to plaintiff. *See* 42 Pa.C.S.A. § 8343(a).

■ A defamatory statement is one that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 923 (3d Cir.) (citation and internal quotations omitted), *cert. denied,* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990). "A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness

for the proper conduct of his proper business, trade or profession." *Maier v. Maretti,* 448 Pa.Super. 276, 671 A.2d 701, 704 (1995), *appeal denied,* 548 Pa. 637, 694 A.2d 622 (1997). The court must initially examine an allegedly defamatory statement in context and determine if it is capable of defamatory meaning. *Id.*

■ Mr. Puchalski contends that Dr. Leary defamed him by not permitting him to talk to the football team following the decision not to renew his contract. Although an action may be defamatory, it must be public and clearly communicate a defamatory meaning. *See Bennett v. Norban,* 396 Pa. 94, 151 A.2d 476, 478 (1959); *Berg v. Consol. Freightways, Inc.,* 280 Pa.Super. 495, 421 A.2d 831, 833–34 (1980). Dr. Leary's decision not to permit Mr. Puchalski to talk to the team did not clearly communicate any defamatory message. Indeed, Mr. Puchalski never states what defamatory meaning was communicated.

Mr. Puchalski contends that Dr. Leary's statement to the school board was defamatory. Although a statement may defame by innuendo, *see Livingston v. Murray,* 417 Pa.Super. 202, 612 A.2d 443, 449 (1992), Dr. Leary never alluded to Mr. Puchalski or to any particular incident. Its focus was on all of the athletic teams and the role of all coaches. None of Dr. Leary's generalized comments could reasonably be interpreted as implying something derogatory about Mr. Puchalski. *See id.,* 612 A.2d at 448–49 (article discussing search for new coach and new coach's qualifications did not defame old coach by implying he did not have same qualifications).[5]

---

4. Any comments made to the EEOC in response to Mr. Puchalski's charge are also absolutely privileged and hence not defamatory. *See Giusto v. Ashland Chemical Co.,* 994 F.Supp. 587, 594–94 (E.D.Pa.1998); *Milliner*

*v. Enck,* 709 A.2d 417, 419 n. 1 (Pa.Super.1998).

5. One school board member, Harpur Tobin, Jr., believed Dr. Leary's statement was directed at Mr. Puchalski's conduct. Mr. Tobin,

Dr. Stapleford's statement to the EEOC that Puchalski made a racial comment is absolutely privileged. *See Giusto v. Ashland .Chem. Co.,* 994 F.Supp. 587, 593–94 (E.D.Pa.1998); *Milliner v. Enck,* 709 A.2d 417, 419 n. 1 (Pa.Super.1998). Although he so speculates, Mr. Puchalski presents no competent evidence that Dr. Stapleford made any defamatory comments about him at a meeting discussing the non-renewal of Mr. Puchalski's contract or in other conversations.

Dr. Stapleford's statements in the two newspaper articles are not defamatory. Dr. Stapleford's characterization of Mr. Puchalski's assessment of their relationship as untrue in the Springfield Sun article was his opinion and did not imply the existence of undisclosed derogatory factual information. *See Baker v. Lafayette Coll.,* 516 Pa. 291, 532 A.2d 399, 402 (1987). *See also Redco Corp. v. CBS, Inc.,* 758 F.2d 970, 972 (3d Cir.1985); *Parano v. O'Connor,* 433 Pa.Super. 570, 641 A.2d 607 (1994). Dr. Stapleford's comment reported in the Record that the school had "some young folks" who were internal candidates for the position did not imply that Mr. Puchalski was too old to coach and had no defamatory meaning.

Mr. Puchalski characterizes as defamatory Mr. McGovern's statements that he was concerned about the loss of two "young" teachers, that "there is more to this story than what was in the paper" and that Mr. Puchalski had made a racial comment.

Mr. McGovern's comment quoted in the Springfield Sun does not imply that Mr. Puchalski was too old to coach. *See Livingston,* 612 A.2d at 448.[6] There is no evidence that the comment that "there was more to the story" was false. *See Corabi v. Curtis Publ'g Co.,* 441 Pa. 432, 273 A.2d 899, 906 (1971); *Simms v. Exeter Architectural Prods., Inc.,* 916 F.Supp. 432, 436–37 (M.D.Pa.1996). A reasonable person would not have understood that comment to have defamatory meaning.

Although Mr. Puchalski speculates that Mr. McGovern told Mr. Farrington and Mr. Shelley about the racist remark, both testified that no one ever told them that Mr. Puchalski had made such a comment. Although Mr. McGovern states that he "may have" related such a comment to his wife and Mike Dmytryszyn, an assistant coach, there is no competent evidence that he actually did so.

Mr. McGovern's statements to Messrs. Travers, Stapleford and Mersky that Mr. Puchalski made a specific racist remark is capable of defamatory meaning. To impute racism to a plaintiff, particularly one for whom such an attitude could be incompatible with the proper performance of his public responsibilities, may be defamatory. *See MacElree v. Philadelphia Newspapers, Inc.,* 544 Pa. 117, 674 A.2d 1050, 1054 (1996).[7]

---

however, was influenced in this perception by the inside information he already had about Mr. Puchalski's situation. There is no evidence that any other person in the audience so understood Dr. Leary's statement which did not discuss any particular coach or sport. *See Rockwell v. Allegheny Health, Educ. & Research Found.,* 19 F.Supp.2d 401, 405 (E.D.Pa.1998) (court evaluating allegedly defamatory statement looks to "effect the article is fairly calculated to produce and impression it would naturally engender in minds of aver-

age persons among whom it is intended to circulate").

**6.** Further, Mr. McGovern denies using the word "young" and there is no affidavit from the reporter or other competent evidence to show he did.

**7.** There is authority that characterizing someone or something he has said as "racist" is not alone actionable. *See Stevens v. Tillman,* 855 F.2d 394, 401–02 (7th Cir.1988); *Smith v.*

██ Although he speculates that the comments prejudiced his chances for obtaining alternate employment and injured his reputation, Mr. Puchalski has produced no competent evidence of reputational harm. Mr. Mersky and Dr. Stapleford were involved in the decision not to renew Mr. Puchalski's contract. *See D'Errico v. DeFazio,* 763 A.2d 424, 433 (Pa.Super.2000) (no reputational injury when alleged defamation communicated principally to those involved in plaintiff's termination). Mr. Travers did not believe that Mr. Puchalski made the alleged remark, and Mr. Tobin testified that no one on the school board was aware of the racist remark incident. Mr. Puchalski does aver that the entire episode made him depressed. While not very precise, this evidence of emotional harm is sufficient. *See Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.,* 761 A.2d 553, 556 (Pa.Super.2000) (showing of harm required to sustain defamation claim may be mental pain and anguish *or* damage to reputation).

 Mr. McGovern's comments to Dr. Stapleford and Mr. Mersky, however, are not actionable because they are conditionally privileged. Statements are condi-

tionally privileged if some interest of the person who publishes defamatory matter is involved, some interest of the person to whom the matter is published or some other third person is involved or a recognized interest of the public is involved. *See Miketic v. Baron,* 450 Pa.Super. 91, 675 A.2d 324, 329 (1996). Communications among managers regarding employee job performance, discipline and termination are privileged when the publisher of the defamatory communication shares an interest in the employee's performance with the recipients. *See McDaniel v. American Red Cross,* 58 F.Supp.2d 628, 633 (W.D.Pa. 1999); *Miketic,* 675 A.2d at 330; *Rutherfoord v. Presbyterian–Univ.,* 417 Pa.Super. 316, 612 A.2d 500, 507 (1992); *Daywalt v. Montgomery Hosp.,* 393 Pa.Super. 118, 573 A.2d 1116, 1118 (1990). Messrs. McGovern, Mersky and Stapleford clearly shared an interest in Mr. Puchalski's performance at Springfield. Mr. Puchalski has produced no competent evidence of abuse.[8] Mr. McGovern's statements to Dr. Stapleford and Mr. Mersky are not actionable. *See Momah v. Albert Einstein Med. Ctr.* 978 F.Supp. 621, 636 (E.D.Pa.1997); *Burns v. Supermarkets Gen. Corp.,* 615 F.Supp. 154, 159 (E.D.Pa.1985); *Vargo v.*

---

*School Dist. of Philadelphia,* 112 F.Supp.2d 417, 429 (E.D.Pa.2000); *Raible v. Newsweek,* 341 F.Supp. 804, 807 (W.D.Pa.1972). Here, however, it appears that Mr. McGovern may have articulated the specific offensive statement attributed to Mr. Puchalski, taking it beyond the realm of mere opinion or general characterization. Moreover, defendants themselves have not argued that the alleged statement cannot be defamatory.

**8.** To show abuse of the conditional privilege, a plaintiff must show the statements were actuated by malice or negligence, were made for a purpose other than that for which the privilege is given, were made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege or included defamatory matter not rea-

sonably believed to be necessary for the accomplishment of the purpose. *See Giusto,* 994 F.Supp. at 593. A plaintiff must present some competent evidence of abuse of privilege to survive summary judgment. *See Maier,* 671 A.2d at 706. Mr. Puchalski adduces no evidence indicating that Mr. McGovern was motivated by malice, that Mr. Mersky or Dr. Stapleford should not have been informed, that Mr. McGovern spoke for any purpose other than informing them or that his statements to them included any extraneous defamatory matters. Mr. McGovern did not act negligently in crediting the contemporaneous account of a news reporter. Mr. Conduit confirmed in his deposition that he heard Mr. Puchalski make a racist comment and had related this to Mr. McGovern.

*Hunt,* 398 Pa.Super. 600, 581 A.2d 625, 628–29 (1990).

### D. *Civil Conspiracy*

■ Mr. Puchalski charges that Mr. McGovern and Dr. Stapleford conspired to defame him and remove him from his position as head football coach because of age.

■ To sustain his civil conspiracy claim, Mr. Puchalski must show that Mr. McGovern and Dr. Stapleford acted in concert with intent to injure him and with intent to do an unlawful act or an otherwise lawful act by unlawful means. *See Rutherfoord,* 612 A.2d at 508. As these defendants were employees and agents of the District, Mr. Puchalski must show that they acted outside of the scope of their employment. *See Doe v. Kohn, Nast & Graf, P.C.,* 862 F.Supp. 1310, 1328 (E.D.Pa.1994).

■ Mr. Puchalski contends that Mr. McGovern and Dr. Stapleford acted outside of the scope of their employment because the District forbade discrimination on the basis of age. Failure to follow a company anti-discrimination policy, however, is rarely sufficient to take an action outside of the scope of employment. *See Lowery v. Circuit City Stores, Inc.,* 206 F.3d 431, 447 (4th Cir.2000) (supervisor who failed to promote plaintiff because of race acted within scope of employment although company had policies against such discrimination); *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.,* 982 F.2d 1086, 1096 n. 12 (7th Cir.1992) (discriminatory acts were within employees' scope of employment although their employer instructed them not to discriminate); Restatement (Second) of Agency § 230 (employee may still act within scope of employment even though employer forbade that action).

■ "Acts fall within the scope of employment when they are of the kind [a servant] is employed to perform, occurring substantially within the authorized time and space limits, and actuated, at least in part, by a purpose to serve the master." *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 150 (3d Cir.1999). As Athletic Director and Principal of Springfield respectively, Mr. McGovern's and Dr. Stapleford's discussion of a coach's performance and a decision about whether to retain him are acts of a type which they were employed to perform. There is no competent evidence that they did not act in the normal time and space limits, within the range of their duties and at least in part to serve Springfield.

### E. *False Light Privacy Claim*

■ To sustain this claim, Mr. Puchalski must show that Mr. McGovern and Dr. Stapleford publicized private facts which placed him in a false light. *See Weinstein v. Bullick,* 827 F.Supp. 1193, 1202 (E.D.Pa.1993).[9] These facts must be highly offensive to a reasonable person and not of legitimate concern to the public. *See Strickland v. University of Scranton,* 700 A.2d 979, 987 (Pa.Super.1997); *Harris v. Easton Publ'g Co.,* 335 Pa.Super. 141, 483 A.2d 1377, 1384 (1984). They must entail such a "major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken." *Curran v. Children's Serv. Ctr. of Wyoming County, Inc.,* 396 Pa.Super. 29, 578 A.2d 8, 13 (1990).

---

9. Mr. Puchalski also suggests that Dr. Leary's comments to the school board placed him in a false light. Dr. Leary, however, is not named as a defendant in this count. In any event, these comments did not refer to Mr. Puchalski, let alone include private facts about him.

Mr. Puchalski contends that Mr. McGovern cast him in a false light by commenting that he made a racist remark. From the evidence, one could find that Mr. McGovern told this only to Messrs. Travers, Stapleford and Mersky. This is insufficient publicity to sustain a false light claim. *See Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133, 137 (1974) (disclosure to four persons held insufficient publicity); *Curran v. Children's Service Ctr., Inc.*, 396 Pa.Super. 29, 578 A.2d 8, 12 (1990) (publicity means communication to "the public at large or to so many persons that the matter must be regarded as substantially certain to become one of general public knowledge").

■ Mr. Puchalski predicates his claim against Dr. Stapleford on his reaction to Mr. Puchalski's assessment of their relationship as untrue, his description of why an on-site coach was advantageous and his comment that there were "some young folks" who might be internal candidates for the position.

Mr. Puchalski has produced no evidence that these statements were false. *See Weinstein*, 827 F.Supp. at 1202. Moreover, it is impossible to imagine how these comments were a "major" misrepresentation of Mr. Puchalski's character, history, activities or beliefs.

F. *Intentional Interference with Contractual Relations*

■ Mr. Puchalski contends that by "slandering, libeling, defaming and violating his constitutional rights," defendants Stapleford, Leary and McGovern intentionally interfered with his contractual relationship with Springfield. To maintain an intentional interference with contractual relations claim, it must be shown that a party interferes with the performance of a contract between another and a third party. *See Maier v. Maretti*, 448 Pa.Super. 276, 671 A.2d 701, 707 (1995). When an employee, acting within the scope of employment, interferes with a contractual relationship between his employer and another, there are not three parties. *See id.; Rutherfoord*, 612 A.2d at 507–08 (employees within scope of employment are not third parties and thus there can be no intentional interference claim).

G. *Loss of Consortium*

■ Lisa Puchalski's claim for loss of consortium is dependent on Mr. Puchalski's right to recover in tort. *See Little v. Jarvis*, 219 Pa.Super. 156, 280 A.2d 617, 620 (1971) (spouse's right to recover for loss of consortium derives solely from other spouse's right to recover in tort). As Mr. Puchalski's defamation claim against Mr. McGovern for the alleged statement to Mr. Travers survives and it is not clear that Mrs. Puchalski will be unable to show some harm as a result of this statement, the loss of consortium claim also survives.

H. *Recovery of Future Wages*

■ Defendants contend that they are entitled to judgment on Mr. Puchalski's prayer for future wages under the ADEA and PHRA because he did not mitigate his damages. Front pay is discretionary and should not be awarded on an ADEA or PHRA claim when the plaintiff failed to mitigate his damages. *Anastasio v. Schering Corp.*, 838 F.2d 701, 708–09 (3d Cir.1988). A plaintiff fails to mitigate when there is substantially equivalent work available and he has not exercised reasonable diligence in finding new work. *Booker v. Taylor Milk Co.*, 64 F.3d 860, 864 (3d Cir.1995); *Anastasio*, 838 F.2d at 708. Defendants bear the burden of proving a failure to mitigate. *Id.* at 707.

Mr. McGovern avers and Mr. Puchalski does not dispute that eight head coaching positions were available in 1998 in "the

southeastern Pennsylvania area," six such positions were open in 1999 and eight in 2000. Mr. Puchalski counters that all of the available head coaching positions other than the three for which he applied were located at least 45 minutes away from his full-time position at Carson Valley, while Springfield was only a five minute commute.

There is no evidence of the precise locations of these employment opportunities, or of what the "southeastern Pennsylvania area" consists of. Mr. Puchalski need not accept employment that is an unreasonable distance from his residence. *See NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1314 (D.C.Cir.1972); *Oldfather v. Ohio Dep't of Transp.*, 653 F.Supp. 1167, 1179 (S.D.Ohio 1986). There is no evidence of record as to the distance between the referenced employment positions and Mr. Puchalski's residence. An issue of material fact thus exists regarding mitigation.

## V. *Plaintiff's Summary Judgment Motions*

In two distinct partial summary judgment motions, plaintiffs seek judgment on the ADEA and PHRA claims and on "defendants' alleged legitimate non-discriminatory firing and/or not rehiring David Puchalski." Defendants have moved for sanctions against plaintiffs' counsel for the filing of these motions.

In the first motion, plaintiffs suggest that Mr. Puchalski is entitled to judgment on the ADEA and PHRA claims because he has established a prima facie case of age discrimination. This is untenable and seems to reflect a fundamental misunderstanding of the *McDonnell Douglas* burden-shifting framework. Establishing a prima facie case does not constitute proof of an ADEA claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);

*Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234–35 (3d Cir. 1999).

In the second motion, plaintiffs suggest that they have shown the proffered legitimate reasons for the non-renewal of Mr. Puchalski's contract were not the true reasons and these reasons should thus be "stricken." To meet their burden of articulating a legitimate, nondiscriminatory reason for the employment action, defendants "need not persuade the court that [they were] actually motivated by the proffered reasons." *See Iadimarco v. Runyon*, 190 F.3d 151, 157–58 (3d Cir. 1999). The burden is on the plaintiff to produce sufficient evidence to permit a finding that the proffered legitimate reasons are actually pretextual. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). Unless it clearly appears from the record that no reasonable factfinder could conclude defendants were motivated by their articulated reasons, summary judgment is inappropriate. Plaintiffs have demonstrated no such thing.

## VI. *Conclusion*

Consistent with the foregoing, defendants' motions will be granted as to plaintiffs' § 1983 claim and claims of negligent and intentional misrepresentation, invasion of privacy-false light, intentional interference with a contractual relationship and civil conspiracy. The case will proceed on Mr. Puchalski's claims of age discrimination and defamation claim against defendant McGovern for the alleged statement to Mr. Travers. Insofar as she claims damages resulting from that alleged act of defamation, Mrs. Puchalski may proceed with her loss of consortium claim.

Plaintiffs' motions will be denied.