## PITTSB. C. & ST. L. RY. CO. v. JAMES A. LYON.

ERROR TO THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 17, 1888—Decided January 7, 1889.

1. When the reasonableness or unreasonableness of a rule of a railroad company depends upon the existence of particular facts and circumstances, it is a question for the jury, under proper instructions; but if the facts are undisputed the question is a proper one for the court.

2. A regulation of a railroad company under which the sale of a ticket to any regular stopping station of the train is refused, or under which, if a through ticket is accepted, the right of the passenger to alight and remove his baggage at any such station is denied, is unreasonable and void.

3. Any regulation that deprives a passenger of the right to stop and receive his baggage at any regular station or stopping place of the train on which he may be traveling, is necessarily arbitrary, unreasonable and illegal.

4. In torts that are committed through mistake, ignorance, or mere negligence, the measure of damages is compensation; but in such as are committed wilfully, maliciously, or so negligently as to indicate a wanton disregard of the rights of others, vindictive or exemplary damages may be awarded.

5. While natural persons may do with themselves and their property whatever is not forbidden, artificial persons cannot rightfully do anything that is not expressly or by necessary implication permitted by the law of their being: per Mr. Justice STERRETT.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 145 October Term 1888, Sup. Ct.; court below, No. 75 August Term 1885, C. P.

On May 22, 1887, a summons in case was served upon the agent of the defendant company at Washington, Pa., in a suit by Prof. James A. Lyon against the Pittsburgh, Cincinnati & St. Louis Railway Company. The defendant pleaded, not guilty.

At the trial on October 27, 1887, the facts appeared in evidence that the plaintiff on March 24, 1885, desiring to go to

New Orleans, applied to defendant company's agent at Washington, Pa., for a ticket to Birmingham, a passenger station within the limits of Pittsburgh, near which station is a passenger station of the Pittsburgh & L. E. Railroad. He was informed that no tickets were sold to Birmingham, but that a ticket to Pittsburgh covered all stations within the city limits. The plaintiff purchased a ticket to Pittsburgh and, producing it to the baggage agent, asked to have his trunk checked to Birmingham. This the baggage agent refused to do, saying that the rules of the company required that all baggage should be checked to the point of destination shown upon the ticket. The plaintiff at first refused to accept the check tendered, but at length accepted it and his trunk was placed on the train. At Birmingham, which was a regular stopping station of his train, the plaintiff alighted and there demanded his trunk, which was refused and carried to the Union Station in Pittsburgh, one mile away. The plaintiff, rather than delay, took the train upon the Pittsb. & L. E. Railroad about to start and made arrangements to have his trunk follow him. The facts are more fully stated in the opinion.

The court, STOWE, P. J., C. P. No. 1, 5th judicial district, charged the jury as follows:

This is simply a question between Lyon, the plaintiff, an individual, and the railway company, the plaintiff going to the railway company and demanding certain rights which they refused to give him; and the whole right of the plaintiff to recover here depends upon whether he had a right to demand what he asked, and they refused to do that which they were bound to do.

It seems there was no written order given on the part of the superior officers of the defendant company with reference to baggage, but they did have, according to the testimony, which I presume you will have no doubt in believing, a verbal order under which the practice was that they would not ordinarily deliver baggage to a person buying a ticket here in Washington for Pittsburgh, at Birmingham station; and it seems to be contended, and I presume you will have no difficulty in finding, it was done by some general order of the company. Now the first question is, was that a reasonable regulation; was it such a rule as the company had a right to

Charge of Court below.

make? Because, while a railroad company has a right to make certain rules and regulations for its own management, and while it may be an inconvenience, to a certain extent, to parties and the patrons of the road, yet they have a right to make them and the public have no right to complain. As, for instance, they are not bound in case they are running a train that didn't stop from Mansfield to the Union depot,—they are not bound to sell me a ticket to any point between those points, because they are not bound to stop, although I may want to get off and notify them of the fact at the time. If the train is not in the habit of stopping at a certain point, they are not bound to stop there, and consequently they are not bound to let me off, nor my baggage off. But the testimony shows these trains did stop, or the train of the plaintiff stopped in Pittsburgh, and stopped at Birmingham station. The practice was to sell a ticket to the city of Pittsburgh. Temperanceville, Point Bridge, Birmingham station and 4th Avenue, as they are called, are all in the city of Pittsburgh; and the practice was not to discriminate with reference to price, but anybody wanting to go to any of these places, including Temperanceville and beyond that towards the city, bought a ticket for one dollar to go to Pittsburgh. Now, the question arises whether or not, selling tickets to a certain point, or to the city of Pittsburgh, and when they allowed and were in the habit of allowing parties to get off at any of these stations, under a ticket sold which would take them to Union station, they had a right to lay down a rule by which, although the party might get off himself, he would be compelled to go to Union station to get his baggage. I say that such a rule is unreasonable and one the company had no right to make; and, therefore, the existence of a rule of that kind with reference to passengers was a violation of their duty; and, in conforming with the rule, while the inferior officers of the road may be perfectly justifiable in doing it, yet it is such a rule as the company had no right to make, and they become responsible in damages if they undertake to do it in reference to passengers. I put it upon the broadest ground. But there is a narrower ground on which it might be put. It seems they did allow parties, not only to get off themselves, because that is unquestioned, but they did allow certain parties, commercial travelers, parties holding

thousand-mile tickets, and on some other occasions other parties, to get off and take their baggage off at that point.   But it is immaterial, so far as the legal question is concerned, whether or not the party is going by the Lake Erie road, or going to Birmingham, or where he may go ; it is a question of right, so far as the citizen is concerned, as the law affects this railroad company. . . . .

[Now, they refused to give him a ticket, except to Pittsburgh ; he went to a certain station in Pittsburgh ; but instead of allowing him to get his baggage off at Birmingham, they delivered the baggage at Union station.   In doing that they established a rule which required the officers of the road, or the parties in control of the train to do a certain thing, and I say the managers of the road who established those rules have done a thing which the law does not justify them in doing.   I think it is an unreasonable and improper regulation, and one which if complied with, as was done here, renders the party liable in damages.] [4]

[If you find the facts such as indicated, on the part of the plaintiff and not substantially, if at all, contradicted, the next question is, what should the plaintiff recover in damages?   He has not shown any particular damages, and therefore the ordinary rule would be nominal damages, six cents, which would carry costs.] [5]   The jury are not limited to merely compensatory damages, or mere nominal damages.   They may, if the circumstances of the case show aggravation and violence, or anything done with an intent to annoy or injure, give what we call punitive damages, damages by way of punishment, or exemplary damages by way of example, to prevent their doing this kind of thing again.   [Now, while this is an action brought for the special relief of the plaintiff, yet there are some circumstances in this case which give the jury the right to pass upon that question of exemplary damages.] [5]   And if they come to that, and think that anything more than nominal damages should be allowed, it is for them to say what amount should be imposed upon the defendant.   [So far as the case goes, there was no violence, there was no abuse ; there was merely a refusal to give the party his trunk, and a violation, as we have instructed you, of their legal duty to him as a passenger.] [5]   Whether there was anything more in the case is for

you to determine. [We can only say if you find, in the language of the point presented by the counsel for plaintiff, that there was unjust discrimination as to the plaintiff, then you may give exemplary, give punitive damages; otherwise you should give only nominal damages.] [5]

The plaintiff has asked us to say to you:

1. Mere compensation is not the rule in a case like the present. The jury may, if they find unjust discrimination or oppression on the part of the defendant, give exemplary or punitive damages to the plaintiff.

Answer: Compensation is the ordinary rule in such a case as this. But if you find unjust discrimination or oppression as to the plaintiff, you may give exemplary or punitive damages. However, I say this, as to the plaintiff; looking at it with reference to that point, you have no right to inquire into the purpose so far as a competing road is concerned. We can't try this case as if the Lake Erie road was a party concerned here, bringing suit to recover for direct damage done to it by means of discrimination against it. We have nothing to do with that. It may have been the motive to avoid competition with that road that induced the making of this rule; but the question still comes back to the starting point, did they have the right to make the rule? If they did, then of course the law would justify them in doing what they did, refusing under the circumstances to hand him over his trunk. But we have said as a matter of law, regardless of the motive, they have no right to make this rule, and therefore the plaintiff is entitled to recover, if you believe the testimony, at least nominal damages. Whether he is entitled to recover more, depends upon the facts as you find them from the testimony in the case.[1]

The defendant presents the following points:

1. That if the plaintiff received from the defendant a check calling for delivery of his baggage at Pittsburgh, with the understanding that he would not be allowed to receive it until it reached its destination, then he cannot recover in the event of a refusal to deliver it short of the point of delivery.

Answer: Refused. This is refused because it would ignore the validity, or the invalidity rather, of this rule. It makes no difference whether he was notified he would not receive his trunk short of the Union Depot, or not, provided the ground

upon which they insisted upon the non-delivery was insufficient, that is to say, the rule of the company which we have already said is invalid.[2]

2. That a railroad company has a right to make general rules for the conduct of its business, and if the jury believe that the plaintiff sought to compel a violation on the part of the defendant's employees of such a rule, and failed in his attempt, he cannot recover on account of such failure.

Answer: Refused. Of course a party would have no right to recover against a railroad for the refusal of the officers to violate a rule that was a proper and reasonable rule. It would be absurd to suppose the railroad company would be liable for its officers doing that which they have a right, and it was their duty to do. But where the rule is, as we have said this was, an unreasonable and improper rule, it would be no protection to the company. If it were not so, then the company could lay down just whatever rules it pleased, and however inconvenient, however unreasonable, the mere fact that the traveler was told that the company would do thus and so, would be a protection to the company for doing that which they had no right to do.[3]

The jury returned a verdict in favor of the plaintiff for $200. A rule for a new trial having been discharged, on March 29, 1888, judgment was entered, when the defendant company took this writ, assigning as error:

1. The answer to the plaintiff's first point.[1]
2, 3. The answers to the defendant's points.[2] [3]
4. The part of the charge embraced in [ ][4]
5. The parts of the charge embraced in [ ][5]

*Mr. A. M. Todd*, for the plaintiff in error:

1. The right of a railroad company to make reasonable rules for its own protection, and for the safety and convenience of its passengers, has been repeatedly recognized: Penn. R. Co. v. Langdon, 92 Pa. 22; Dietrich v. Penn. R. Co., 71 Pa. 432; Penn. R. Co. v. Zebe, 33 Pa. 318. The test of the legality or illegality of a regulation affecting the rights of passengers, or prescribing rules for their guidance or conduct, is their reasonableness or unreasonableness; they are unlawful when they

are unreasonable, or an unnecessary infringement on the rights and liberties of. the passenger. The distinction between such regulations as are conducive to the comfort and convenience of the traveler, or to protect the rights of the company, must from its very nature be a question of fact rather than of law, and properly for the consideration not of the court, but of the jury: State v. Overton, 4 Zab. 435; Jenks v. Coleman, 2 Sumn. 221. At least the question is a mixed question of law and fact, and proper for submission to the jury under instructions: Bass v. Railway Co., 36 Wis. 450 (17 Amer. R. 495); 1 Redf. on Railways, 88; Commonwealth v. Power, 7 Met. 586; Day v. Owen, 5 Mich. 520 (72 Amer. D. 62).

2 The testimony will be searched in vain for any proof of discrimination against the plaintiff. The jury were expressly told that compensation was the ordinary rule in a case like this. No claim was made that the plaintiff had suffered any pecuniary loss, or sustained any actual or substantial damage. Under these circumstances the court should not have submitted the question as to discrimination to the jury, and should not have said to them that there were "some circumstances in this case," which gave them "the right to pass upon that question of exemplary damages," and, in the answer to the plaintiff's point, "if you find unjust discrimination or oppression as to the plaintiff, you may give exemplary or punitive damages." "When a case is submitted to a jury on clearly insufficient evidence, such as no court ought to sustain a verdict upon, it is our plain duty to reverse:" Cauffman v. Long, 82 Pa. 72; Rowand v. Finney, 96 Pa. 192.

*Mr. M. C. Acheson* (with him *Mr. A. W. Acheson*), for the defendant in error:

1. The reasonableness of a rule or regulation is a question of law for the court to decide: Rorer on Railroads, 227; Taylor, Corporations, § 348; Kneedler v. Norristown, 100 Pa. 372; Lynn v. B. & L. Ass'n, 117 Pa. 13; Hibernia Fire Engine Co. v. Harrison, 93 Pa. 269; Dietrich v. Penn. R. Co., 71 Pa. 432; Leaming v. Wise, 73 Pa. 176; West Chester etc. R. Co. v. Miles, 55 Pa. 210.

2. Corrective damages may be given for the sake of example: McBride v. McLaughlin, 5 W. 375. Exemplary damages

may be given with a view to promote the peace and quiet of society and to protect every one in the full enjoyment of his rights: Phillips v. Lawrence, 6 W. & S. 154; where there is more than an ordinary wrong, as a punishment to the wrong-doer: McDonald v. Scaife, 11 Pa. 381; to deter others from the commission of like wrongs: Blair Iron & Coal Co. v. Lloyd, 3 W. N. 103; for a wanton invasion of plaintiff's rights: Amer v. Longstreth, 10 Pa. 145; in case of oppression, outrage and vindictiveness: Nagle v. Mullison, 34 Pa. 53; for wilful injury, the result of reckless indifference: Lake Shore etc. R. Co. v. Rosenzweig, 113 Pa. 519.

OPINION, MR. JUSTICE STERRETT.

One of the questions presented for our consideration is whether the regulation of the railway company in conformity to which its agents refused to sell plaintiff below a ticket to Birmingham station, and to check or deliver his baggage there, is unreasonable and therefore unlawful.

The facts, upon which that and subordinate questions depend, are undisputed. It appears from the evidence that the company has five passenger stations within the corporate limits of Pittsburgh, viz.: Temperanceville, Point Bridge, Birmingham, Fourth Avenue and Union Depot, the eastern terminus of the road. Birmingham station, about a mile south of the latter, and diagonally across the street from the eastern or terminal station of the Pittsburgh & Lake Erie Railroad, is a regular stopping place for passenger trains, and admittedly the most convenient point for transfer of passengers and baggage coming into the city on plaintiff-in-error's road and proceeding westward by the Pittsburgh & Lake Erie Road. In March last, the time between the arrival of morning train on the former and departure of train on the latter road, was about twenty-five minutes, amply sufficient to make transfer from one road to the other at Birmingham station.

At the time above mentioned, plaintiff below bought from the Pittsburgh & Lake Erie Company's agent at Washington, Pa., a ticket for passage from Pittsburgh to New Orleans. He then applied to plaintiff-in-error's agent for a ticket from Washington to Birmingham station, intending to proceed thence on his journey without any delay at Pittsburgh; but, being in-

formed that it would be necessary for him to buy a ticket to Union Depot station, he was obliged to accept that or nothing. He then requested that his baggage be checked to Birmingham station, or so marked that it could be delivered to him there. That was also refused, and he then notified the baggage-master that on arrival of train at that station he would demand and expect to receive his baggage. The demand was accordingly made but it was unheeded, and the trunk was carried to the Union Depot. The alternative was thus presented of either waiting in Pittsburgh until he could obtain his baggage or proceeding on his journey without it. He chose the latter, stopped off at Cincinnati and there awaited the arrival of his baggage, which by his direction was obtained and forwarded after him.

The reasonable requests of plaintiff below were refused by the company's agents in obedience to previous orders from their official superiors, and not for the purpose of intentionally subjecting him to the inconvenience and annoyance that necessarily resulted, and which the officer giving the order must have known would result therefrom. The orders that were given were not disavowed by the company. On the contrary, it undertook to justify them as a valid and proper exercise of its power to make and enforce reasonable rules and regulations for the transaction of its business.

In view of the undisputed evidence of what occurred, the inconvenience, annoyance, and delay to which plaintiff below was arbitrarily and unnecessarily subjected, the learned president of the Common Pleas instructed the jury that the regulation in question was unreasonable and invalid. After reciting the facts he said, among other things: " The question arises whether or not selling tickets to a certain point, or to the city of Pittsburgh, and allowing parties to get off at any of these stations under a ticket which would take them to the Union Depot station, they have a right to lay down a rule by which, although the party might get off himself, he would be compelled to go to the Union station for his baggage. I say such a rule is unreasonable and one the company had no right to make, and therefore the existence of a rule of that kind with reference to passangers was a violation of their duty. While the inferior officers of the road may be justifiable in obeying

the rule, yet it is such a rule that the company had no right to make, and they become responsible in damages if they undertake to enforce it as against passengers. I put it upon the broadest ground. But there is a narrower ground on which it might be put. It seems they did allow parties not only to get off themselves—because that is unquestioned—but they did allow certain parties, commercial travelers, parties holding thousand-mile tickets, and on some other occasions other parties to get off and take their baggage off at that point. But it is immaterial whether or not the party is going by the Lake Erie Road or going to Birmingham, or wherever he may go; it is a question of right so far as the citizen is concerned," etc.

It is contended that the above quoted instructions and others of like import, were erroneous, in that they entirely withdrew from the consideration of the jury the reasonableness or unreasonableness of the regulation under consideration, and disposed of it as a question of law. While this position is not without the sanction of respectable authority, the better opinion appears to be that the question is generally a mixed one of law and fact. So far as the reasonableness of a given rule depends upon the existence of particular facts and circumstances, it is necessarily a question for the jury, under proper instructions from the court; but, if the facts are undisputed, the question is a proper one for the court: Old Colony R. Co. v. Tripp, 33 Am. & Eng. R. R. Ca. 488, 496, notes and authorities there cited. As was said in Vedder v. Fellows, 20 N. Y. 126, 131, " There are strong reasons why the reasonableness of railroad regulations should be submitted to the court as a question of law rather than to the jury as one of fact. Ordinarily jurors are not aware, nor can they readily be made aware of all the reasons calling for the rule. . . . . What one jury might deem an inconvenient rule another might approve as judicious and proper. There would be no uniformity."

The facts of the case at bar being undisputed it was clearly the province of the court to say, as matter of law, whether the regulation in question was reasonable or not, and it was rightly held to be unreasonable and invalid. It was of such an arbitrary and vexatious character that no tribunal, court, or jury could well declare it otherwise.

Opinion of the Court.

Another question is, whether the case, as presented by the evidence, is one in which the jury should have been restricted to actual or merely compensatory damages. We think not. In actions on contract, except promises to marry, the amount recoverable is limited to the actual damages caused by the breach, the measure being the same whether the defendant fails to comply with his contract through inability, or wilfully refuses to perform it. But in torts the rule is different; the motive of the defendant becomes material. In those that are committed through mistake, ignorance, or mere negligence, the ordinary rule is mere compensation; but in such as are committed wilfully, maliciously, or so negligently as to indicate a wanton disregard of the rights of others, the jury are not restricted to compensation merely. They may, if the evidence justifies it, give vindictive or exemplary damages, such as will not only compensate the injured party, but at the same time tend to prevent a repetition of the wrong, either by the defendant or others.

It is claimed that the regulation complained of was obstructive in its purpose, intended to prevent the transfer of passengers and their baggage from plaintiff-in-error's road to a rival railroad. The fact may be so, but it is unnecessary in this case to inquire whether it is or not. It is enough to know that the traveling public have some rights, one of which is the transportation of themselves and baggage over any of the railroads of the commonwealth, and that includes the right to stop and receive their baggage at any regular station or stopping place for the train on which they may be traveling. Any regulation that deprives them of that right is necessarily arbitrary, unreasonable, and illegal. The fact must not be ignored that corporations are artificial persons, created for specific purposes and invested with such and only such powers as are conferred by law. While natural persons may do with themselves and their property whatever is not forbidden, artificial persons cannot rightfully do anything that is not expressly or by necessary implication permitted by the law of their being. Plaintiff in error was incorporated as a common carrier of freight and passengers. As such it owes a duty to the traveling public which it cannot arbitrarily and wilfully ignore.

It is unnecessary to further consider either of the specifications of error. The case was correctly tried and plaintiff in error has no just reason to complain of the result.

Judgment affirmed.