# White v. George

C.P. of Mercer County, no. 1999-52470.

*Stanley M. Stein, David S. Bloom* and *Beth S. Mills,* for plaintiff.

*John P. Corcoran Jr.,* for defendant George.

*Brian T. Must, Steven Petrikis* and *Michael P. Robic II,* for defendant ACCG.

DOBSON, *J.,* April 23, 2004—The matters before the court for disposition are defendant's preliminary objections and supplemental preliminary objections to plaintiff's amended complaint in equity. For the following reasons, the objections will be granted in part and denied in part.

Viewed in the requisite light, the facts may be summarized as follows. Associates in Child Guidance (ACG), a close corporation, was formed in December of 1996 with Ms. White and Mr. George as the sole shareholders, each owning 50 percent of the shares. White and

George were the only officers, and comprised the entire board of directors of ACG.

ACG was formed for the purpose of providing wrap-around services. These services consist of child guidance for children with mental health issues, and at-risk youth. ACG was reimbursed for these services by the Commonwealth's Medical Assistance Program. The billing for the services provided was through George's psychologist license. ACG encountered problems due to the fact that it was limited in the number of hours per week it could bill through George's license.

In order to combat this problem, White and George formed Associates in Counseling and Child Guidance (ACCG), a non-profit corporation, in January of 1997. George was appointed the clinic director of ACCG, and White was appointed the director of administration. The board of directors approved an independent contractor agreement between ACG and ACCG. Under the agreement, ACG would provide staff and services in conjunction with the wrap-around program to ACCG, and ACCG in turn would reimburse ACG for the services and staff.

In the early months of 1999, the relationship between White and George began to deteriorate. Throughout the year there were numerous instances of alleged misconduct on the part of George. In the amended complaint White alleges that George engaged in a course of conduct designed to: sabotage her ability to perform her duties at ACG and at ACCG; cast her in a negative light to employees of ACG and ACCG, and persons in the community; jeopardize ACG and ACCG; and interfere with the existing contract between ACG and ACCG.

The specific acts that constitute the course of conduct by George that White alleges include: breaking into her office, desk and filing cabinet, and removing and copying client files; the enlisting of third persons by George to assist him in the alleged course of conduct; making disparaging remarks about White to employees, and persons in the community with which White worked in her capacity at ACG and ACCG, such as school district officials; reassigning White's secretary to other duties and eventually terminating her employment; threatening to place White on administrative leave from her position as director of administration of ACCG and eventually doing so; transferring ACG-supplied employees to the payroll of ACCG; intimidation of White through security guards; manipulating the employees of both ACG and ACCG, particularly by instructing them to not speak with White; threatening White and screaming at her in front of clients and employees; co-mingling of and interference with corporate assets of ACG and ACCG; moving the physical location of ACG to the ACCG offices and denying White access; withholding corporate information regarding ACG from White; misappropriation of ACG funds by withholding monies owed to ACG by ACCG, and using ACG monies for George's personal use; calling and attending illegal corporate meetings of ACCG and ACG; damaging, converting and giving away equipment that was the property of ACG; and not fulfilling his duties to ACG.

On December 7, 1999, the board of directors of ACCG voted to place White on administrative leave from her position as director of administration with that corporation. On the thirteenth of that month, White filed a com-

plaint in equity. Over the next several years, numerous motions were filed by the attorneys for both parties. Additionally, there were numerous other lawsuits filed between these parties during that time.

In March of 2000, during a hearing on a motion for special relief, it was suggested that the court appoint a custodian to run ACG. Both parties agreed with the condition that the appointed custodian would run the company for profit, and not liquidate it. A custodian was appointed in April of 2000. In December of 2001, George moved for the termination of the custodianship and related relief, specifically the dissolution and liquidation of ACG. This motion was based in part on the fact that the custodian had reported that ACG was no longer engaged in any business activity.

This court issued an order on August 29, 2002, directing, inter alia, the parties to provide the court and the other parties with a list of lawsuits that they intended to pursue, either personally or derivatively. The order further provided for the apportionment of the interests of each party in pending and future lawsuits. Finally, the order appointed a liquidation receiver.

The amended complaint giving rise to the preliminary objections at issue was filed on December 1, 2003.

Defendant's first objection is that White lacks the capacity to bring suit. The basis for this objection is that White failed to exhaust intracorporate remedies. Hence, she lacks standing to bring derivative causes of action on behalf of ACG.

The defendants cite *Cuker v. Mikalauskas,* 547 Pa. 600, 692 A.2d 1042 (1997), in support of their position. In

*Cuker,* the Supreme Court of Pennsylvania adopted several ALI Principles for Corporate Governance, specifically, sections 7.02-7.10 and 7.13. *Id.* at 613-14, 692 A.2d at 1049. Under section 7.03, "Exhaustion of intracorporate remedies: The Demand Rule," a shareholder or director must make a demand upon the board of directors requesting that the board prosecute the action or take other corrective measures. Section 7.03(a). The demand should give notice to the board and specifically state the facts relied upon. *Id.* The demand requirement is excused only if the plaintiff makes a showing that the corporation would be irreparably injured by the demand requirement and in cases such as that, notice must be given promptly after filing suit. Section 7.03(b).

This section has been interpreted by Pennsylvania courts to mean that there are only limited circumstances in which the requirement of demand should be excused. *Drain v. Covenant Life Insurance Co.,* 551 Pa. 570, 581-82, 712 A.2d 273, 278-79 (1998);[1] *Baron v. Pritzker,* 52 D.&C.4th 14 (2001); available at 2001 WL 1855054, *5 n.8 (March 6, 2001). These cases, interpreting *Cuker,* do away with the futility exception to the demand rule. Therefore, under *Cuker* and its progeny, a shareholder must exhaust all intracorporate remedies prior to bringing suit.

In adopting section 7.03, the Supreme Court did not reject the other sections. *Cuker v. Mikalauskas,* 547 Pa.

---

1. In *Drain,* the court held that the demand rule from *Cuker* did not apply because the case was originally filed before *Cuker* was decided, and the court declined to apply the holding in *Cuker* retroactively. 551 Pa. at 582, 712 A.2d at 279.

600, 613 n.5, 692 A.2d 1042, 1049 n.5. Rather, courts are free to consider and utilize other sections of the Principles if they are useful and not in contradiction with existing Pennsylvania law. *Id.*

Section 7.01(d) of the Principles states that "in the case of a closely held corporation, the court in it's discretion may treat an action raising derivative claims as a direct action," and do away with the requirements applicable to derivative actions. In the case of a close corporation, the court can allow the case to proceed as a direct action as long as doing so would not: "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." Section 7.01(d).

In *Liss v. Liss,* at 2002 WL 576510, *7 (Phila. Cty. 2002), the court applied section 7.01(d) and treated the derivative claims as direct claims for which demand was not required. The court also examined two other Pennsylvania cases which were factually similar to the present case; closely held corporations with two 50 percent shareholders. *Id.* at *6-7.[2] In these two cases the courts treated otherwise derivative claims as direct claims, thus doing away with the demand requirement. *Id.*

---

2. *Baron* at *5 (applying section 7.01 and treating all of the derivative claims as direct claims, thus negating the demand requirement); *Levin v. Schiffman,* 54 D.&C.4th 152 (2001); available at 2001 WL 1807922, *6 (Feb. 1, 2001) (finding that section 7.01(d) is consistent with Pennsylvania law and applying it as an exception to the demand requirement in the case of a closely held corporation).

ACG, like the corporation in *Liss* and the other cases examined by that court, is a closely held corporation with two shareholders. This court finds that section 7.01 is applicable.

Having found that section 7.01 applies, it is necessary to examine the facts of the present case in light of the considerations established by section 7.01. This court finds that, pursuant to the order of this court dated August 29, 2002, treating the derivative claims as direct claims would not implicate any of the concerns of section 7.01.

Waiving the demand requirement will not result in the defendants being exposed to multiple suits. There is only one other shareholder who could bring suits and he (George) is a defendant.

Waiving the demand requirement will not materially prejudice the interests of creditors of the corporation. The corporation is already being liquidated.

Waiving the demand requirement will not interfere with a fair distribution of any recovery. Any recovery will be between White and George. How it will be done will be determined in the lawsuit.

For these reasons, this court will exercise its discretion and treat the derivative causes of action pled in the amended complaint as direct causes of action under section 7.01 of the ALI Principles.

The defendant's first objection is therefore denied.

Defendant's second objection is a demurrer and seeks to have the entire amended complaint stricken on the ground that no private cause of action exists under the Professional Psychologists Practice Act, 63 P.S. §§1201-18 (PPPA).

When reviewing preliminary objections in the nature of a demurrer, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 941-42 (Pa. Super. 2000). When presented with preliminary objections whose end result would be the dismissal of a cause of action, a court should sustain the objections only where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazaras,* 746 A.2d 642, 643 (Pa. Super. 2000). (citations omitted) Furthermore,

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. . . . Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999). (citations omitted)

The basis for this objection is the allegation in paragraph 34 of the amended complaint. Paragraph 34 of the amended complaint states: "[a]ll of the actions by George constituted intentional misconduct which are violations of the laws of the Commonwealth of Pennsylvania relating to psychologists, the practice of psychology and the operation of outpatient clinics."

The only other reference to the PPPA in the amended complaint appears to be paragraph 29, which alleges that an ACG psychologist filed a formal complaint against George with the Pennsylvania Board of Psychology. The

result of this complaint was the suspension of George's license, and a period of probation.

Plaintiff does not cite the PPPA in the amended complaint, does not specifically include a violation of the PPPA in the amended complaint, and does not specifically include or mention the PPPA in any of the 11 counts. Plaintiff's response to the objection is that she raises these allegations for the sole purpose of providing a factual basis for the complaint, not to support a private cause of action. Plaintiff denies that she is predicating a cause of action upon the PPPA.

This court agrees that White does not raise a cause of action based upon the PPPA. Therefore, the defendant's second objection is denied.

Defendant's third objection is a motion to strike on the grounds that "the complaint alleges numerous allegations containing scandalous and impertinent matter, which have absolutely no bearing, relevance or materiality on the causes of action pled by White." Defendant seeks to have the amended complaint stricken in its entirety or at least the 20 paragraphs specifically referenced.[3]

Plaintiff's response is that these allegations are necessary because they form the basis of the amended complaint.

Pa.R.C.P. 1028(a)(2) permits a motion to strike for the purpose of preliminarily objecting to the pleading based upon the inclusion of scandalous or impertinent matter.

---

3. Defendant specifically objects to ¶¶29, 30, 31, 32, 34, 39, 40, 41, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62 and 63.

*Calvert v. New Freedom Borough,* 21 D.&C.4th 303 (York Cty. 1993).

Scandalous and impertinent has been defined as "immaterial and inappropriate to the proof of the cause of action." *Commw. Department of Environmental Resources v. Peggs Run Coal Co.,* 55 Pa. Commw. 312, 320, 423 A.2d 765, 769 (1980). The right to strike impertinent matter should be exercised sparingly; unless there is prejudice, the motion should not be granted. *SEPTA v. Philadelphia Transportation Co.,* 38 D.&C.2d 653, 656 (Phila. Cty. 1965). Further, "where matter is impertinent but not injurious, it need not be stricken." *Id.*

The first specific allegation of scandalous and impertinent matter refers to the unpled violations of the PPPA. Defendant also specifically objects to the allegations of the dual relationship between George and a Michelle Henning; a newsletter that George allegedly distributed as an official publication of ACCG; harassment of White by George; and the board of directors' meetings and bylaws of ACCG.

Under the Pennsylvania Rules of Civil Procedure, preliminary objections "shall state specifically the grounds relied upon." Pa.R.C.P. 1028(b). The defendant specifically objects to only 20 of the 134 paragraphs in the complaint. Therefore, the request to strike the complaint in its entirety is denied.

Turning to the specific objections to the amended complaint, the court finds that only one of the paragraphs objected to constitutes scandalous or impertinent matter. The paragraphs referring to the PPPA are not scandalous or impertinent. As stated, this court finds that White is

not alleging a violation of that statute, but merely alleging facts relevant to the causes of action. Likewise, the allegations regarding a newsletter published and disseminated by George, the alleged harassment, and false representations of White, and the facts alleged relating to the bylaws and directors' meetings of ACCG are neither scandalous nor impertinent.

The objection to these paragraphs is therefore denied.

This court finds that paragraph 30, however, is scandalous and impertinent. This paragraph refers to an alleged "dual relationship" between George and another woman who White claims is both a client and an employee of ACCG. This information is not relevant to any of the 11 counts of the amended complaint, which all sound in either breach of contract or tort. The inclusion of this information in the amended complaint is immaterial to the causes of action and therefore inappropriate.

Hence, defendant's objection based upon scandalous and impertinent matter is denied, except as to paragraph 30, for which the objection is granted and said paragraph is stricken from the amended complaint.

Defendant's fourth objection is a demurrer to the first count of the amended complaint. This objection is based upon the assertion that there were no prospective clients or customers defendant could interfere with because of the nature of the contract between ACG and ACCG.[4]

Plaintiff denies that ACG's only function was to provide temporary employees to ACCG and that ACCG was the only customer of ACG. She argues that she has pled

---

4. He also argues it is barred by the gist of the action doctrine. This argument will be discussed later in this opinion.

sufficient facts at this stage to satisfy the elements of tortious interference.

The elements of tortious interference with business relations are: (1) a contractual or prospective contractual relation, (2) the purpose or intent to harm the existing or prospective relation, (3) the absence of privilege or justification on the part of the defendant, and (4) actual damage to plaintiff as a result of the defendant's conduct. *Pawlowski v. Smorto,* 403 Pa. Super. 71, 78, 588 A.2d 36, 39 (1991).

In the complaint, White states merely that George caused "tortious interference with ACG contracts by and through his control of ACCG as executive director." White alleges that George caused interference with her "past, present, and future contractual rights and relationships with its existing and prospective clients, customers, employees and independent contractors." White alleges that as a result she has suffered irreparable harm and damages, specifically including lost business opportunities.

This court finds that White has alleged facts sufficient for a cause of action for interference with existing clients and customers. In the amended complaint White alleges that George transferred ACG employees to the employ of ACCG, forced the resignations of ACG personnel, and disrupted the relations between White and employees of both ACG and ACCG by directing them to harass her and to limit their interaction with her.

There is an existing contract between ACG and ACCG, White has alleged that George's actions were purposeful and intentional, there is no privilege or justification for

the alleged actions of George, and White has alleged that she suffered damages as a result of these actions.

The objection is denied with respect to the existing contractual relationship between ACG and ACCG.

However, White has not pled facts sufficient to sustain a cause of action for interference with any prospective contractual relationships. She fails to point to a prospective contract, or actual damages to that prospective contract or to her caused by the actions of George.

Therefore, the objection is granted with respect to interference with prospective clients and customers.

Defendant's fifth objection is a demurrer to the second count. This objection is based upon the assertion that defendants could not tortiously interfere with their own contract with ACG.

Tortious interference with a contract provides liability for one who intentionally interferes with the performance of a contract between another person and a third person. *Maier v. Maretti,* 448 Pa. Super. 276, 288, 671 A.2d 701, 707 (1995). The interfering person is liable for the non-performance of the contract and any pecuniary loss therefrom. *Id.* The existence of a third person, other than the defendant, is essential to the tort of interference with contractual relations. *Id.*

A corporation acts only through its officers, and officers cannot be regarded as third persons when acting in their official capacity. *Id.* Where there is a contract between the plaintiff and a corporation, the corporation and its agent are considered one, and there is no third party to sustain a claim for contractual interference. *Daniel Adams Associates Inc. v. Rimbach Publishing Inc.,* 360 Pa. Super. 72, 82, 519 A.2d 997, 1002 (1987).

In the present case, George, as an officer of ACCG cannot be considered a third person for purposes of sustaining a cause of action for tortious interference with contractual relationships. This cause of action requires three persons, the plaintiff, the other person to the contract, and the defendant who interfered with the contract. White does not allege a third party other than George to support a cause of action for interference with contractual relationships.

Hence, defendant's objection is granted, and the second count of the amended complaint is stricken.

Defendant's sixth objection is a demurrer to the third count of the amended complaint on the grounds that the complaint fails to state facts or allegations that George diverted corporate opportunities from ACG, and that White fails to identify what these opportunities might be.

The complaint states that George "purposely failed to act exclusively for ACG or in the best interests of ACG and diverted or may have diverted corporate opportunities from ACG for the benefit of himself or others." White fails to address this objection in her response brief.

The doctrine of corporate opportunity applies to officers and directors, and imposes liability on those "who take personal advantage of business opportunities when these opportunities fall within the 'scope of activities' of, and constitute a 'present or potential advantage' to, the corporation." *Levy and Surrick v. Surrick,* 362 Pa. Super. 510, 515, 524 A.2d 993, 995 (1987). The doctrine prohibits an officer or director from competing with the corporation in any fashion, even in areas outside the scope of the officer's or director's work for the corporation. *Id.*

The principle against usurpation of corporate opportunities stems from the fiduciary duty owed to the corporation by officers and directors. *Lutherland v. Dahlen,* 357 Pa. 143, 151, 53 A.2d 143, 147 (1947). The test of liability is whether or not they have unjustly gained enrichment. *Bailey v. Jacobs,* 325 Pa. 187, 194, 189 A. 320, 324 (1937). In this test, it is irrelevant whether their actions have caused a loss or any type of harm to the corporation. *Id.* A fiduciary may not place himself in a position that "invites conflict between self-interest and integrity." *Id.* at 194, 189 A. at 324-25. Whether or not something is a corporate opportunity is a question of fact. *CST Inc. v. Mark,* 360 Pa. Super. 303, 308, 520 A.2d 469, 471 (1987).

A review of the amended complaint shows that White fails to plead facts sufficient to indicate that there were opportunities that George interfered with. Hence, this objection is granted, and Count III of the amended complaint is stricken in its entirety.

Defendant's seventh objection is a demurrer to the fourth count. The objection is based upon the assertion that the amended complaint fails to set forth sufficient facts to establish either a fiduciary duty or a breach thereof.

The court does not accept the argument that George does not owe a fiduciary duty to ACG. George was the vice-president of ACG. It is well-settled that a fiduciary duty arises by virtue of his position as an officer of ACG; it does not need to be provided for specifically. Officers and directors must perform their duties "in good faith, in a manner [they] reasonably believe to be in the best interests of the corporation and with such care, including

reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances." 15 Pa.C.S. §512.

White alleges in her complaint that "George's unlawful actions, inactions, omissions and commissions as set forth in this complaint constitute a continuing intentional, reckless and outrageous breach of his fiduciary responsibility to ACG and White." There are specific allegations in the amended complaint that George took actions that were harmful to ACG.

These allegations, if true, constitute a breach of the fiduciary duty that George owed ACG. White alleges that George diluted and wasted the assets of ACG, engaged in self-dealing, used ACG assets for his personal use, and opened a separate banking account in the name of ACG and issued checks out of this account.

The court finds that White has alleged facts which, presumed as true, are sufficient to sustain a cause of action for breach of fiduciary duty. Therefore, defendant's objection is denied.

Defendant's eighth objection is a demurrer to the fifth count of the amended complaint on the ground that there is no recognized cause of action for breach of fair dealing in Pennsylvania. Further, defendant objects on the grounds that there is no contract between George and either White or ACG.

Pennsylvania has adopted section 205 of the Restatement (Second) of Contracts. *Kaplan v. Cablevision of PA Inc.,* 448 Pa. Super. 306, 318, 671 A.2d 716, 721 (1995). Section 205 provides: "Every contract imposes upon each party a duty of good faith and fair dealing in

its performance and its enforcement." "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement (Second) of Contracts §205 cmt. a. (1981). Examples of bad faith include: "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance . . . and interference with or failure to cooperate in the other party's performance." *Kaplan,* 448 Pa. Super. at 318, 671 A.2d at 722.

Plaintiff has alleged that "George has steadfastly undertaken a scheme and plan to manipulate ACG's financial decision-making mechanisms to his personal and exclusive benefit, and to the detriment of ACG, to White and the creditors and employees thereof." There are sufficient allegations in the complaint that George acted in bad faith, including transferring ACG employees to ACCG, making false allegations against White, attempting to gain control of ACG for himself, and a detailed list of George's actions enumerated in paragraph 73.

Breach of fair dealing imposes a duty upon the parties to the contract. George is not a party to the agreement, therefore this cause of action cannot be applied to George personally. The alleged actions must be by ACCG, or by George acting on behalf of ACCG in order to sustain a cause of action for breach of fair dealing.

Upon review of the amended complaint, this court finds that White does allege actions by ACCG or by George on behalf of ACCG. These allegations are that ACCG ratified the breach of the agreement by failing to stop George's actions and that the ACCG board of directors held improper meetings. These actions or inactions by

ACCG would be sufficient to deny the objection, in that they do allege action by ACCG, which is a party to the agreement. However, the amended complaint does not name ACCG as a defendant to this count.

For this reason, the objection is granted, and the fifth count of the amended complaint is stricken in its entirety.

Defendant's ninth objection is a demurrer to the sixth count of the amended complaint on the grounds that breach of best efforts is not a cognizable cause of action under Pennsylvania law.

Breach of best efforts is not generally an independent cause of action. A duty to use best efforts is encompassed within a fiduciary duty and the duty of fair dealing. It can become a separate cause of action if the contract expressly states that one party has a duty to use his or her best efforts to perform a specific act or acts.[5]

The agreement does not provide for an express duty of best efforts on the part of either party.

An implied duty to make a diligent and good faith effort will be found where there is a promise to perform a

---

5. *Carlos R. Leffler Inc. v. Hutter,* 696 A.2d 157, 158 (Pa. Super. 1997) (mentioning an agreed upon duty to use best efforts in promoting plaintiff's products); *Trident Corp. v. Reliance Insurance Co.,* 350 Pa. Super. 142, 146, 504 A.2d 285, 287 (1986) (alleging breach of duty to use best efforts to provide plaintiff with bonding requirements based upon plaintiff's "broker of record" letter); *Edinger v. Upper Makefield Twp.,* 25 D.&C.3d 512, 514 (Bucks Cty. 1983) (quoting the employment contract "During the term of his employment [plaintiff] shall devote his best efforts, and his entire time to the performance of the duties and obligations herein"); *Petroleum Marketing Corp. v. Metropolitan Petroleum Corp.,* 396 Pa. 48, 51, 151 A.2d 616, 618 (1959) (citing sales agreement between the parties that buyer would use his best efforts to collect all accounts receivable).

specific act. *Jamison v. Concepts Plus Inc.,* 380 Pa. Super. 431, 439, 552 A.2d 265, 269 (1988). In *Jamison,* the parties entered into an agreement for the sale of real estate. *Id.* at 433, 522 A.2d at 266. The agreement was conditioned upon the buyer obtaining the necessary approval for the subdivision of the land from the township board of supervisors. *Id.*

The court held that the statement in the agreement that the buyer was responsible for obtaining all necessary approval created an obligation on the part of the buyer to act in good faith.

A review of the agreement in the present case reveals no basis upon which an implied duty to use best efforts may be imposed. The agreement creates almost no duty, or promises to perform upon ACCG. The language of the agreement imposes duties almost solely on ACG.

Plaintiff cites *Weisbecker v. Hosiery Patents Inc.,* 356 Pa. 244, 51 A.2d 811 (1947), in support of her position. The case is not relevant. *Weisbecker* deals with the duty owed by a majority shareholder to the minority shareholders. White and George are 50 percent shareholders.

Defendant's objection is granted and the sixth count is stricken.

Defendant's tenth objection is a demurrer to the seventh count of the amended complaint on the grounds that the allegations are meritless, that White fails to specify the alleged waste, whether the waste was of corporate assets, and that White pleads "absolutely no facts in the complaint to support any claim for any type of waste."

Plaintiff fails to address the claim for waste in her response brief. She claims to address both the waste and conversion counts in a section of her response brief, but

actually only addresses the objection to conversion, and fails to address the waste claim.

Defendant cites the American Law Institute, Principles of Corporate Governance, section 142, Waste of Corporate Assets. The correct section for the definition of corporate waste is section 1.42. "A transaction constitutes a 'waste of corporate assets' if it involves an expenditure of corporate funds or a disposition of corporate assets for which no consideration is received in exchange and for which there is no rational business purpose." Section 1.42.

Section 1.42 has not been adopted by the Supreme Court of Pennsylvania. In *Cuker*, the court adopted certain sections of the Principles, and noted that the adoption of those sections was not a rejection of other sections. *Cuker v. Mikalauskas,* 547 Pa. 600, 613 n.5, 692 A.2d 1042, 1049 n.5 (1997). Section 1.42 was not one of the specifically adopted sections.

Pennsylvania Jurisprudence states that in order to find that a waste of corporate assets has occurred, "there has to be something more than a decision adverse to the petitioner. . . . For there to be waste, there must be a blatant squandering of assets to the detriment of the business entity, as if the sole purpose were to harm the entity." 13 Summ. Pa. Jur. 2d Business Relationships §11:24.

The definition of waste provided in Pennsylvania Jurisprudence is not contradicted by the definition stated in the ALI Principles. Further, there is no definition of waste in Pennsylvania case law.

This court finds that, under either definition, paragraph 73(n) of the amended complaint alleges waste of corpo-

rate assets on the part of George. Paragraph 73(n) alleges that George damaged, converted and gave away ACG equipment to ACCG and third parties without corporate authorization or regard to the financial impact upon ACG. This allegation is sufficient to support a claim for waste. This alleged damage and conversion of ACG equipment was without consideration or a rational business purpose. Likewise, the alleged acts appear to be a squandering of assets to the detriment of ACG.

Hence, the objection is denied.

Defendant's eleventh objection is a demurrer to the eighth count of the amended complaint. Defendant alleges that plaintiff fails to allege facts that George took any actions that would constitute conversion. Defendant further objects on the ground that a breach of contract cannot be the basis for conversion due to the fact that there is no property right being interfered with.

Conversion is: "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Baker v. Rangos,* 229 Pa. Super. 333, 348, 324 A.2d 498, 505 (1974).

White alleges that George: broke into White's desk and removed files; broke into White's office, took a filing cabinet containing records and removed the filing cabinet and its contents to the locked office of ACCG; destroyed the contents of the filing cabinet; broke into White's office and took documents; moved the ACG office to a new location; and damaged, converted and gave away ACG equipment to ACCG and third parties.

These allegations are sufficient to make out a cause of action for conversion.

Hence, the objection is denied.

Defendant's twelfth objection is a demurrer to the ninth count of the amended complaint on the grounds that the appointment of a liquidating receiver makes the request for an accounting moot.

As previously discussed, this court has appointed a liquidation receiver. ACG is currently in the process of being dissolved, its business operations having ceased. The court has retained final approval of all distributions of the assets of ACG in order to insure that all debts are paid and that there is a fair and equal distribution of any remaining funds between White and George, the sole shareholders of the corporation. As part of the liquidation process, an accounting will be performed.

For these reasons, this court agrees with the defendant that a request for an accounting is moot. Therefore, this objection is granted, and the ninth count is stricken from the amended complaint in its entirety.

Defendant's thirteenth objection is a demurrer to the tenth count of the amended complaint on the grounds that plaintiff has failed to plead fraud with particularity. The elements of a cause of action for fraud are: (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damages to the recipient as the proximate result. *McClellan v. HMO of Pa.,* 413 Pa. Super. 128, 142, 604 A.2d 1053, 1060 (1992). A "plaintiff must set forth the exact statements or actions" alleged to constitute the fraud. *Id.*

The second element has also been interpreted to require a showing by the plaintiff, "that if the misrepresentation was innocently made [it] related to a matter material to the transaction, [but] if it was knowingly made, materially is not required." *Laird v. The Clearfield & Mahoning RR Co.,* 59 D.&C.4th 556, 565 (Clearfield Cty. 2001).

The *Laird* court also discussed the requisite particularity for a claim of fraud. "While it is impossible to establish precise standards as to the degree of particularity required in a given situation, two conditions must always be met. The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge." *Id.* (citing *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 380, 224 A.2d 174, 179 (1966)).

Plaintiff alleges that George's intentional diversion and misappropriation of ACG's assets operated as a fraud upon ACG, its creditors and shareholders.

It is insufficient to allege that George's intentional diversion and misrepresentation operated as a fraud. These allegations do not meet the level of specificity required when pleading a cause of action for fraud. White fails in the amended complaint to direct this court to any misrepresentation by George, her reliance upon the misrepresentation, and any damages she sustained as a result. The amended complaint is completely devoid of allegations to support a cause of action for fraud.

For these reasons, defendant's objection is granted, and the tenth count of the amended complaint is stricken

in its entirety. This court grants plaintiff leave to amend the complaint in order to plead facts with the required level of specificity to support a cause of action for fraud.

Defendant's fourteenth objection is a demurrer to the eleventh count of the amended complaint.

George objects on the grounds that plaintiff failed to allege sufficient facts to satisfy the element that two or more persons engaged in an unlawful act. This objection is premised on the position that a corporation and its officer cannot be considered two separate entities. Defendant also objects on the ground that no overt act was alleged.

To establish a claim of civil conspiracy, "it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979). Malice, meaning an intent to injure, is essential in proving a claim for conspiracy. *Id.* Further, the unlawful intent must be without justification. *Id.* Additionally, an overt act is required in a claim for conspiracy. *GMH Associates Inc. v. Prudential Realty Group,* 752 A.2d 889, 905 (Pa. Super. 2000).

White fails to direct this court to the specific allegations contained in the amended complaint that form the basis for the claim of conspiracy. However, under the applicable standard of review, assuming all allegations to be true, this court will attempt to discern those allegations in the amended complaint that were intended to form the basis for the claim of conspiracy.

This court assumes that White is arguing that the acts of the board of ACCG constitute the alleged conspiracy.

If the allegations of fraud are against the ACCG board then the requirement of two or more people is met. Again, assuming that the meetings of the board are the basis for the allegations, the requirements of an agreement and unlawful act are met. White alleges that the ACCG board meetings were unlawful under the bylaws, and that any actions taken by the board at these meetings are likewise unlawful. The requirement of the overt act would be met in that the board took action by placing White on administrative leave. The amended complaint is less clear on a malicious intent or the lack of justification. White does, at times, allege an "evil motive," such as in: Count VII for Waste; Count IX for Conversion; Count X for Fraud.

Possible additional allegations of conspiracy may be found in the amended complaint at: paragraph 63 which states that George "with either the knowledge of and/or acquiesce [sic] of some members of the board of directors of ACCG, caused this defamatory communication to be publicized to school district officials and other persons."; paragraph 66 which alleges that George and unknown third persons engineered a course of conduct to take over control of ACG; paragraphs 30-33 which allege that George and Michelle Henning made false representations to ACG and ACCG personnel with actual malice, and instructed persons within the employ of ACG and ACCG to harass White.

Taking all of White's allegations as true, she does not completely fail to allege facts to support a cause of action for civil conspiracy. Addressing George's specific objections, White does allege that two or more persons engaged in acts that were unlawful or lawful but carried out for an unlawful purpose; she is not alleging that the

corporation is one of the persons involved in the alleged conspiracy; and she does allege overt acts.

Despite White's failure to specify the allegations that support this count, the court finds that allegations do exist in the amended complaint to support a cause of action for conspiracy.

Therefore, defendant's objection is denied.

Defendant's fifteenth objection is a motion to strike plaintiff's request for punitive damages on the grounds that the case involves a breach of contract and the grounds that the amended complaint fails to allege facts sufficient to warrant the imposition of punitive damages.

Punitive damages are awarded to punish outrageous acts, and to deter others from engaging in similar conduct. *Viener v. Jacobs,* 834 A.2d 546, 560 (Pa Super. 2003). There must be a reasonable relationship between the underlying cause of action giving rise to an award of compensatory damages and the decision to grant punitive damages. *Id.* The standard requires an analysis of the following factors: "(1) the character of the act; (2) the nature and extent of the harm; and (3) the wealth of the defendant." *Id.* Further, punitive damages are awarded for conduct that is outrageous; acts done with bad motive or reckless indifference to the interests of others. *Id.*

Punitive damages are not proper for a breach of contractual duties, unless the breach involves a duty imposed by society. *Daniel Adams Associates Inc. v. Rimbach Publishing Inc.,* 287 Pa. Super. 74, 77-78, 429 A.2d 726, 728 (1981). Punitive damages are awarded for the purpose of deterring such conduct. *Id.* The theory that punitive damages are not appropriate in breaches of contract

cases is well-settled in Pennsylvania jurisprudence. *Pittsburgh, Cincinnati & St. Louis Ry. Co. v. Lyon,* 123 Pa. 140, 150, 16 A. 607, 609 (1889). In tort cases the motive of the defendant is relevant. *Id.* Punitive damages are awarded not only to compensate the injured party, but also "to prevent a repetition of the wrong, either by the defendant or others." *Id.* Punitive damages are not appropriate in breach of contract cases, because the aim of damages is to compensate the nonbreaching party, and not deterrence. *Id.*

There are no allegations in the amended complaint to establish a breach of any societal duty that would make the granting of punitive damages appropriate on the breach of contract claims.

Hence, defendant's objection is granted as to punitive damages on the breach of contract claims

However, punitive damages would be appropriate on the tort claims if White proves the allegations against George. These allegations, if true, do establish that George's actions were outrageous and done with a bad motive, and reckless disregard for the interests of others. The breaking into White's office and removing client files, enlisting of third persons to interfere with White's ability to perform her duties, making disparaging comments about White to employees and persons in the community, and placing White on administrative leave all amount to conduct that warrants punitive damages. These actions are such that punitive damages would be appropriate for the purpose of deterring such conduct by George and others.

Therefore, the objection is denied to the claims in tort.

Defendant's sixteenth objection is a motion to strike the requests for attorney's fees on the ground that such fees cannot be awarded in a breach of contract action where such relief is not provided for in the contract.

A litigant may not recover attorney's fees unless there is express statutory authorization, clear agreement of the parties, or another established exception. *Shapiro v. Magaziner,* 418 Pa. 278, 280, 210 A.2d 890, 892 (1965). Each party is normally responsible for their own attorney's fees.

White fails to address this argument in her brief in opposition other than to mention attorney's fees in the final sentence of the section regarding punitive damages.

The agreement between the parties does provide for attorney's fees. The agreement states: "ACCG and ACG, as the case may be, shall indemnify the other party for, and hold it harmless against, any loss, liability or expense, including attorney's fees, that the other party may incur, as a result of any act or failure to act of ACCG or the ACG. . . . It is the intent of this paragraph that ACCG and that ACG shall be alone responsible for the legal consequences of their own acts and protect the other from such consequences."

Hence, this objection is denied.

Defendant's seventeenth objection is a demurrer to several of the counts in the amended complaint based upon the gist of the action doctrine. The counts in question are 1, 2, 10 and 11.

The gist of the action doctrine was thoroughly discussed by the Superior Court of Pennsylvania in *Etoll Inc. v. Elias/Savion Advertising Inc.,* 811 A.2d 10 (Pa.

Super. 2002). The court noted that the gist of the action doctrine has not been adopted by the Supreme Court of Pennsylvania, contrary to what George states in this objection. *Id.* at 14.

The doctrine is intended to maintain the distinction between claims for breach of contract and tort claims. *Id.* Practically speaking, the doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Id.* Tort actions result from a breach of duties imposed as a matter of social policy; breach of contract claims result from a breach of duties imposed by a mutual agreement between the parties. *Id.* (citing *Bash v. Bell Telephone Co.,* 411 Pa. Super. 347, 352-53, 601 A.2d 825, 829 (1992)). Further, to allow one party to a contract to sue the other party in tort for a breach of the contract would erode the usual rules of contractual recovery. *Id.*

It is possible that a breach of contract would also give rise to an actionable tort, however, "[t]o be construed as in tort, the wrong ascribed to the defendant must be the gist of the action, the contract being collateral." *Id.* Claims should thus be limited to claims for breach of contract when the obligations and duties are those imposed by the contract, and not by "the larger social policies embodied by the law of torts." *Id.* The test for the application of the gist of the action doctrine is concerned with the essential ground, foundation or material part of an entire lawsuit. *Id.* at 15.

The question of whether the gist of the action doctrine applies is a question of law for the court to decide. *Id.*

The Superior Court looked to federal case law on the issue. *Id.* The *Etoll* court found that federal cases within

the Third Circuit consistently applied the doctrine, and the question of whether the tort claims were barred was decided upon the individual circumstances and allegations of the plaintiff. *Id.* at 17.

The court found that the doctrine bars tort claims: "(1) arising solely from a contract between the parties; . . . (2) where the duties allegedly breached were created and grounded in the contract itself; . . . (3) where the liability stems from a contract; . . . or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependant on the terms of a contract." *Id.* at 19. (citations omitted)

White cites *Koken v. Steinberg,* 825 A.2d 723 (Pa. Commw. 2003), as support for her argument that the gist of the action does not bar her tort claims. *Koken,* however, does not contradict *Etoll,* as White seems to argue in her brief. The court in *Koken* simply decided that, based upon the facts presented in that case, the gist of the action was tort, not contract.

The tort claims presented are sufficiently independent of the breach of contract claims to render the gist of the action doctrine inapplicable to the present case. The allegations against George are not simply actions that breached the agreement between ACG and ACCG. White alleges that George engaged in a course of conduct designed to sabotage her ability to perform her duties and cast her in a negative light to both employees and the community.

This course of conduct included activity that was unrelated to the agreement between ACG and ACCG. For example, White alleges that George broke into her office and removed client files, enlisted third persons to

intimidate White and assist him in intimidating her, making disparaging remarks about White to employees and persons in the community, placing White on administrative leave, and threatening White and screaming at her in front of employees and clients.

These allegations amount to more than a claim for breach of contract. They support causes of action sounding in tort and are sufficiently independent of the breach of contract claims so that the underlying allegations are not so intertwined that one could say that the gist of the action is solely in contract.

Therefore, this court finds that the gist of the action doctrine is not applicable to the present case, and does not bar the tort claims presented by White. Hence, defendant's objection is denied.

The court now turns to the supplemental preliminary objections. For the reasons set forth below, defendant's supplemental objections are denied.

The defendant argues in the first supplemental objection that White is forever barred from asserting a claim for a check in the amount of $28,000 made payable to ACG, that George allegedly misappropriated.

This court's order of August 29, 2002, directed the parties to file a notice of intent to assert claims. In her notice, White states that she intends to assert a claim for the "refund of the sum of $28,000 evidenced by the misappropriation of a check in that amount made payable to ACG by Deborah Mikita."

Defendant argues that pursuant to an order issued by this court that all parties provided notice of intent to assert claims, White's failure to file a complaint regarding

this sum, allegedly misappropriated from ACG, forever bars her from asserting a claim regarding that sum.

White responds that the original and amended complaints included causes of action for waste and conversion, and that the sum in question is included in the respective counts. White argues that filing a separate action for claims which are asserted in the present action is unnecessary.

Defendant seems to base his argument on the fact that White fails to specifically allege that George misappropriated the check in the amount of $28,000 made payable to ACG. This court disagrees. The claims for conversion and waste would encompass the alleged misappropriation of the check in question, and are sufficiently pled in the amended complaint. White's claim for the $28,000 is not barred.

Hence, this objection is denied.

Defendant's second supplemental objection is on the grounds that White raises claims in the amended complaint that she did not raise in her notice to assert claims pursuant to this court's order dated August 29, 2002, and, as such, that order bars her from bringing those claims now.

George specifically objects to paragraphs 66 through 74 of the amended complaint. These paragraphs allege: that George engaged in a course of conduct to gain control of ACG; moved for the dissolution of ACG; unilaterally scheduled a meeting of the ACG board for December 28, 1999; that an illegal meeting of the board of ACG did occur on January 4, 2000; that George has failed to call an annual meeting of the ACG board; that George

opened a bank account in the name of ACG using a false corporate resolution and that George used this account. Paragraph 73 is an enumerated list of alleged actions taken by George.

This court finds that the numerous allegations contained in paragraph 73 are contained in the original complaint. Therefore, as to the allegations in that paragraph, the objection is denied.

The remaining allegations objected to are not contained in the original complaint. These allegations include: that George was pursuing a course of conduct designed to gain control of ACG; that George moved to dissolve ACG; that George scheduled a meeting of the ACG board for December 28, 1999, that a meeting did occur on January 4, 2000, and that the meeting and any actions taken at the meeting were improper; that George opened a bank account in the name of ACG under a false corporate resolution and used said account.

This court finds that these allegations do not raise new causes of action, they are merely factual support for existing causes of action already pled. Therefore, defendant's objection is denied as to the allegations in paragraphs 66 through 72, and paragraph 74.

Hence this order,

## ORDER

And now, April 23, 2004, this matter being before the court on defendant's preliminary objections, it is hereby ordered as follows:

(1) Defendant's objections are granted as to Count II— tortious interference with employment and contractual

relationships, Count III—wrongful diversion of corporate opportunities, Count V—breach of fair dealing, Count VI—breach of best efforts, and Count IX—accounting. These counts are hereby stricken from the amended complaint in their entirety.

(2) Defendant's objection is granted to Count X—fraud. It is further ordered that plaintiff is granted leave to amend the amended complaint for the purpose of alleging facts sufficient to support a cause of action for fraud.

(3) Defendant's objections based upon lack of capacity to sue, insufficiency of a pleading as to all counts, attorney's fees, and gist of the action doctrine are denied.

(4) Defendant's objections are denied as to Count IV—breach of fiduciary duty, Count VII—waste, Count VIII—conversion, and Count XI—civil conspiracy.

(5) Defendant's objection based upon scandalous or impertinent matter is denied, except as to paragraph 30 referencing a dual relationship for which the objection is granted.

(6) Defendant's objection to Count I—tortious interference with existing and prospective clients is granted as to any prospective business relationships, and denied as to the existing business relationship between ACG and ACCG.

(7) Defendant's objection to punitive damages is granted to the extent that plaintiff seeks punitive damages on the breach of contract claims, and denied as to punitive damages for the tort claims.

(8) Defendant's supplemental objections are denied.